387 A.2d 425

PHILADELPHIA NEWSPAPERS, INC., the Associated Press, Central States Publishing Inc., the Pennsylvania Newspaper Publishers Association, the Pennsylvania Society of Newspaper Editors, and the Society of Professional Journalists, Sigma Delta Chi, Greater Philadelphia Chapter, Petitioners,

v.

The Honorable Domenic D. JEROME, Judge of the Court of Common Pleas of Delaware County, Pennsylvania.

EQUITABLE PUBLISHING COMPANY, INC., the Society of Professional Journalists, Sigma Delta Chi, Greater Philadelphia Chapter, the Pennsylvania Newspaper Publishers Association and the Pennsylvania Society of Newspaper Editors, Petitioners,

v.

The Honorable Robert W. HONEYMAN, Judge of the Court of Common Pleas of Montgomery County, Pennsylvania.

MONTGOMERY PUBLISHING COMPANY, Petitioner,

v.

The Honorable Robert W. HONEYMAN, Judge of the Court of Common Pleas of Montgomery County, Pennsylvania.

MONTGOMERY PUBLISHING COMPANY, Petitioner,

v.

The Honorable Robert W. HONEYMAN, Judge of the Court of Common Pleas of Montgomery County, Pennsylvania.

EQUITABLE PUBLISHING COMPANY, INC., the Society of Professional Journalists, Sigma Delta Chi, Greater Philadelphia Chapter, the Pennsylvania Newspaper Publishers Association, and the Pennsylvania Society of Newspaper Editors, Petitioners,

v.

The Honorable Lawrence A. BROWN, Judge of the Court of Common Pleas of Montgomery County, Pennsylvania.

MONTGOMERY PUBLISHING COMPANY, Petitioner,

v.

The Honorable Lawrence A. BROWN, Judge of the Court of Common Pleas of Montgomery County, Pennsylvania.

Supreme Court of Pennsylvania.

April 28, 1978.

486

488

Kohn, Savett, Marion & Graf, David H. Marion, Samuel E. Klein, Philadelphia, for petitioners at No. 384.

Dechert, Price & Rhoads, Arthur E. Newbold, IV, Philadelphia, for petitioner at Nos. 399 and 406.

Morgan, Lewis & Bockius, Roberta S. Staats, Philadelphia, for petitioner at Nos. 400, 401 and 407.

Jonathan Vipond, III, Philadelphia, for respondent at Nos. 384, 399, 400, 401, 406 and 407.

Richard A. Sprague, Philadelphia, for Commonwealth at No. 384.

A. Charles Peruto, Philadelphia, for defendant at No. 384.

William T. Nicholas, Dist. Atty., Ross Weiss, 1st Asst. Dist. Atty., Montgomery County, for Commonwealth at Nos. 399, 400, 401, 406 and 407.

Vincent J. Fumo, Philadelphia, for defendant at Nos. 399, 400 and 401.

Joseph C. Santaguida, Philadelphia, for defendant at Nos. 406 and 407.

Robert P. Kane, Atty. Gen., for Commonwealth at No. 406.

## OPINION OF THE COURT

ROBERTS, Justice.

Petitioner newspapers [1] filed in this Court petitions for writs of mandamus and prohibition and for extraordinary

1. Petitioner newspapers include Philadelphia Newspapers, Inc., The Associated Press, Central States Publishing, Inc., The Pennsylvania Newspaper Publishers Association, The Pennsylvania Society of Newspaper Editors, and The Society of Professional Journalists, Sigma Delta Chi, Greater Philadelphia Chapter (collectively referred to as "Philadelphia Newspapers"); Equitable Publishing Company, Inc., The Society of Professional Journalists, Sigma Delta Chi, Greater Philadelphia Chapter, The Pennsylvania Newspaper Publishers Association, and The Pennsylvania Society of Newspaper Editors and Montgomery Publishing Company (collectively referred to as "Equitable Publishing").

Respondent judges include: The Honorable Domenic D. Jerome, Court of Common Pleas of Delaware County and the presiding judge over pre-trial motions in *Commonwealth v. Boyle*, Nos. 650-A, 650-B, and 650-C, Washington County, March Session, 1974; The Honorable Robert W. Honeyman, Court of Common Pleas of Montgomery County and presiding judge over pre-trial motions in *Commonwealth v. Palmer*, No. 149-77, Montgomery County; and The Honorable Lawrence A. Brown, Court of Common Pleas of Montgomery County and presiding judge over pre-trial motions in *Commonwealth v. Phillips*, No. 5060-76, Montgomery County. Philadelphia Newspapers challenged the orders of Judge Jerome; Equitable Publishing challenged the orders of Judges Honeyman and Brown.

relief, challenging the constitutionality of orders issued by respondent judges, upon the request of defendants in three criminal proceedings, pursuant to the Pennsylvania Rules of Criminal Procedure.[2] Petitioners contended that these orders, limiting public access to pre-trial hearings on motions to suppress evidence, denied their right of access to judicial proceedings. We concluded that petitioners failed to demonstrate that the orders denied them clear rights and therefore denied the petitions.

## I. *Procedural History*

In *Commonwealth v. Boyle*, Nos. 650–A, 650–B, and 650–C, Washington County, March Session, 1974, the defendant Boyle was accused of ordering the death of United Mineworkers union official Joseph Yablonski, a crime which received massive national publicity. On January 24, 1974, we granted Boyle's request to change venue from Washington County because of extensive publicity concerning the crime.[3] In *Commonwealth v. Palmer*, No. 149–77, Montgomery County, the defendant, a police officer, was accused of kidnapping and killing a Montgomery County citizen. Peti-

---

**2.** We considered the petitions pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, §§ 201(2) and 205, 17 P.S. §§ 211.201(2) and 211.205 (Supp.1977). Section 201(2) provides:

"*Original jurisdiction*

The Supreme Court shall have original but not exclusive jurisdiction of:

(2) All cases of mandamus or prohibition to courts of inferior jurisdiction . . .."

Section 205 provides:

"*Extraordinary jurisdiction*

Notwithstanding any other provisions of law, The Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or justice of the peace of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done."

**3.** This Court reversed Boyle's earlier conviction because he was denied an opportunity to present exculpatory evidence. *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977).

tioner Equitable Publishing averred in its petition that the proceedings were "of the highest public interest and concern in Montgomery County."[4] In *Commonwealth v. Phillips*, No. 5060–76, Montgomery County, the defendant was accused of murdering a Montgomery County police officer. Equitable Publishing characterized these proceedings as attracting similar public interest.

 Each defendant filed a pre-trial motion to suppress evidence in accordance with the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 323(a), providing for a pre-trial hearing to determine the admissibility of evidence defendants claim has been obtained in violation of their constitutional rights.[5] Each defendant requested the trial court to exercise its authority, pursuant to Pa.R.Crim.P. 323(f), 323(g), 326, and 327,[6] to enter special orders closing the pre-trial hearing to the public, sealing the record of these pre-trial proceedings, and prohibiting participants in these proceedings from discussing, disclosing, or disseminating evidence "the admissibility of which may have to be determined by the Court." Respondent Judge Jerome entered the requested order in *Boyle*.[7] Respondents Judges Honeyman

4. In acting upon these petitions, we accepted these averments as true. See *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973).

5. Pa.R.Crim.P. 323(a) provides:
 "*Suppression of Evidence*
 (a) The defendant or his attorney may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's [constitutional] rights."

6. See infra text at Part III, at 430–431.

7. Upon filing applications to suppress evidence pursuant to Rule 323(a), defendant Boyle moved to close the suppression hearings under Rule 323(f) & (g) and under 326 and 327 to limit public comment by parties, witnesses and attorneys on the evidence sought to be suppressed.
 Philadelphia Newspapers averred that on March 28, 1977 the court prohibited "parties, attorneys, investigators, judicial officers, state and federal public officials, and prospective witnesses from discussing or commenting upon any proposed evidence or disseminating any documents, the admissibility of which may have to be determined by the Court;" on May 2, 1977, directed the press and public out of the

and Brown entered the requested orders in *Palmer* and *Phillips,* respectively.[8]

On May 3, 1977, one day after pre-trial suppression proceedings in *Commonwealth v. Boyle* began, Philadelphia Newspapers filed a petition to vacate the orders of respondent Judge Jerome, and a request to stay the pre-trial proceedings. Judge Jerome declined to rule on the petition to vacate the orders until completion of the pre-trial proceedings and refused the stay. One day later, Philadelphia Newspapers filed in this Court its petitions for writs of mandamus and prohibition and for extraordinary relief, requesting this Court to direct Judge Jerome to hold the suppression hearing open to the public and provide other appropriate relief, including a stay of all proceedings. On May 9, 1977, Judge Jerome again declined to rule on the petition, believing he lacked jurisdiction over the controver-

courtroom while pre-trial motions were heard; and ordered sealed all papers related to the pre-trial proceedings.

Where a defendant moves to close a suppression hearing and to restrain participants from public comment thereon, an order such as this one prohibiting participants from "discussing or commenting upon any proposed evidence or disseminating any documents, the admissibility of which may have to be determined by the Court" is the proper order to enter under Rules 326 and 327.

**8.** Equitable Publishing averred that on May 2, 1977, the court prohibited "parties, attorneys, police officers, court personnel, prison personnel, and personnel of the sheriff's office from discussing or commenting about [*Commonwealth v. Palmer*]"; directed the press and public out of the courtroom during pre-trial proceedings; and sealed the record of these proceedings.

Equitable Publishing also averred that on May 9, 1977, the court prohibited "parties, attorneys, police officers, court personnel, prison personnel, personnel of the sheriff's office, and prospective witnesses" from making or authorizing statements out of court relating to *Commonwealth v. Phillips.* Equitable Publishing also averred that Judge Brown ordered the press and public out of the courtroom, and directed that the record and proceedings be sealed.

On the record presented here, we believe that the orders in *Palmer* and *Phillips* had essentially the same scope as the order in *Boyle,* supra note 7.

Respondents invoked Rules 326 and 327 only to ensure that parties to suppression hearings closed under 323 would not release pre-trial prejudicial information. We therefore were not faced with a case in which Rules 326 and 327 were used for any other purpose.

sy once petitioner sought special relief in this Court. On May 23, 1977, we denied the requested relief.

Equitable Publishing, on May 12, 1977, filed with the trial court a motion to vacate the orders of Judge Honeyman in *Commonwealth v. Palmer.* Judge Honeyman did not act upon the motion until May 24. Judge Honeyman denied the motion on the basis that the newspapers were without standing to intervene in the criminal proceedings. On May 26, Equitable Publishing filed its petitions for special relief in this Court, requesting the same relief as Philadelphia Newspapers did from the orders in *Commonwealth v. Boyle.*[9] Equitable Publishing averred here that the suppression hearing record had been unavailable only until May 20, 1977, when Palmer's trial ended.[10] We denied relief on June 20, 1977.

On May 12, 1977, Equitable Publishing filed a motion to vacate the orders of Judge Brown in *Commonwealth v. Phillips.* Judge Brown did not rule upon the motion until June 2, 1977, when he dismissed the motions for the same reason as Judge Honeyman. Equitable Publishing filed its petitions for special relief in this Court on June 7, requesting the same relief it sought from the orders in *Commonwealth v. Palmer.* On June 20, 1977, we denied relief.

Petitioners appealed from the orders of this Court to the Supreme Court of the United States. On January 9, 1978, 434 U.S. 241, 98 S.Ct. 546, 54 L.Ed.2d 506, the Court, per curiam, concluded that the record did not indicate whether we "passed on [petitioners'] federal claims" or whether we denied special relief "on an adequate and independent state ground." The Court therefore vacated our orders denying special relief and "remand[ed] the cause to [this C]ourt for such further proceedings as [we] may deem appropriate to

9. Equitable Publishing and Montgomery Publishing did not expressly request this Court to stay the pre-trial proceedings in *Commonwealth v. Palmer.*

10. See *United States v. Cianfrani,* 573 F.2d 835 (3d Cir., filed March 16, 1978) (tapes defendant sought to suppress must be made public after defendant has pleaded guilty); Pa.R.Crim.P. 323(g).

clarify the record. See *California v. Krivda,* 409 U.S. 33, [93 S.Ct. 32, 34 L.Ed.2d 45] (1972)." Mr. Justice Rehnquist, joined by Mr. Justice Stevens, filed a dissenting opinion. On February 9, 1978, this Court received the official mandate of the Supreme Court. Accordingly, we file this opinion.

## II. *State Remedies Requested by Petitioner Newspapers*

 Petitioners sought writs of prohibition and mandamus from this Court.[11] Prohibition and mandamus both

11. Prohibition is an extraordinary writ designed to assure regularity in judicial proceedings by preventing unlawful exercise or abuse of jurisdiction. *In re Reyes,* 476 Pa. 59, 381 A.2d. 865 (1977); *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975); *Carpentertown Coal and Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426 (1948); *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). "Its function is to restrain or prohibit an offending court from continuing its unwarranted conduct when continuation threatens imminent harm to the individual on whose behalf the writ is issued." Comment, "The Writ of Prohibition in Pennsylvania," 80 Dick.L.Rev. 472, 472–73 (1976) (footnotes omitted).

While prohibition prevents action, mandamus compels it. *Carpentertown Coal and Coke Co. v. Laird,* supra. Like prohibition, mandamus is an extraordinary writ of the common law, designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy. *Princeton Sportswear Corp. v. Redevelopment Authority,* 460 Pa. 274, 333 A.2d 473 (1975); *Valley Forge Racing Ass'n v. State Horse Racing Comm'n,* 449 Pa. 292, 297 A.2d 823 (1972). A court issuing a writ of mandamus may direct the exercise of discretion, but not performance of a particular discretionary act. *Taylor v. Abernathy,* 422 Pa. 629, 222 A.2d 863 (1966); *Mellinger v. Kuhn,* 388 Pa. 83, 130 A.2d 154 (1957).

Petitioners also requested this Court to invoke its extraordinary jurisdiction because of the asserted immediate public importance of the issues. See supra note 2; *Wilson v. Blake,* 475 Pa. 627, 381 A.2d 450 (1977) (plenary jurisdiction exercised to determine right of criminal defendant under Pa.R.Crim.P. 141(c)(4) to make tape recording of preliminary hearing); *Citizens Committee v. Board of Elections,* 470 Pa. 1, 367 A.2d 232 (1976) (plenary jurisdiction invoked to decide constitutionality of procedures by which Mayor of Philadelphia was to be recalled from office). The presence of an issue of immediate public importance is not alone sufficient to justify extraordinary relief. As in requests for writs of prohibition and mandamus, we will not invoke extraordinary jurisdiction unless the record clearly demonstrates a petitioner's rights. Even a clear showing that a petitioner is aggrieved does not assure that this Court will exercise its discre-

require a party seeking relief to establish a violation of clear rights not remediable by ordinary processes. This requirement ensures that only the most meritorious claims will require this Court to depart from its normal appellate function and consider an original proceeding. Petitioners failed to establish their entitlement to these extraordinary remedies because they did not present a showing that the orders of respondents, entered pursuant to the Pennsylvania Rules of Criminal Procedure, denied clear rights of petitioners. We therefore denied the petitions.

We first discuss the nature of Pa.R.Crim.P. 323(f) & (g), 326, and 327, pursuant to which the challenged orders were issued. We then discuss petitioners' asserted right of access to pre-trial judicial proceedings and the circumstances in which this right may be temporarily limited in order to protect constitutional rights of individuals and important interests of the public. We next discuss the nature of the right of defendants to trial by an impartial jury and the interest of the Commonwealth and its citizens in the prompt and fair disposition of criminal litigation, both of which are protected by Rules 323, 326, and 327. Finally, we set forth why on these records the Rules of Criminal Procedure may permissibly be applied in these cases to enforce constitutional rights of the accused and promote public interests.

### III. *The Pennsylvania Rules of Criminal Procedure and Their Objectives*

The Pennsylvania Rules of Criminal Procedure "are intended to provide for the just determination of every criminal proceeding," Pa.R.Crim.P. 2, and "secure simplicity in procedure, fairness in administration and the elimination of unjustified expense and delay . . . ." Id. This comprehensive set of statewide Rules assists in the fair, prompt,

tion to grant the requested relief. See *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

orderly, and uniform resolution of recurring problems in the administration of our state system of criminal justice.[12]

The Rules upon which the challenged orders were based serve an important function in this scheme by avoiding premature disclosure of information which would jeopardize the right of an accused to an impartial jury. Pa.R.Crim.P. 323(f) & (g) provides:

"*Suppression of Evidence*

\* \* \* \* \* \*

(f) The hearing, either before or at trial, shall be held in open court unless defendant moves that it be held in the presence of only the defendant, counsel for the parties, court officers and necessary witnesses. If the hearing is held after the jury has been sworn, it shall be held outside the hearing and presence of the jury. In all cases the court may make such order concerning publicity of the proceedings as it deems appropriate under Rules 326 and 327.

(g) A record shall be made of all evidence adduced at the hearing. The clerk of court shall impound the record and the nature and purpose of the hearing and the order disposing of the motion shall not be disclosed by anyone to anyone except to the defendant and counsel for the parties. The record shall remain thus impounded unless the interests of justice require its disclosure.

Pa.R.Crim.P. 326 provides:

"*Special Orders Governing Widely-Publicized Or Sensational Cases*

12. Our Rules of Criminal Procedure are a system designed to give effective protection to the rights of defendants and maintain the integrity and stability of our state system of criminal justice. For example, Pa.R.Crim.P. 1100 protects the guarantee of a speedy trial by requiring, subject to carefully drawn exceptions, that an accused be brought to trial within 180 days of the initiation of criminal proceedings against him. Compare *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (providing for ad hoc approach to speedy trial claims). See also, e. g., Pa.R.Crim.P. 319 (ensuring knowing and voluntary pleas of guilty); Pa.R.Crim.P. 1101 (knowing and voluntary waiver of right to trial by jury).

In a widely-publicized or sensational case, the Court, on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order. In such cases it may be appropriate for the court to consult with representatives of the news media concerning the issuance of such a special order."

Pa.R.Crim.P. 327 provides:

> "*Public Discussion of Pending Or Imminent Criminal Litigation By Court Personnel*
>
> All court personnel including, among others, court clerks, bailiffs, tipstaffs and court stenographers are prohibited from disclosing to any person, without authorization by the court, information relating to a pending criminal case that is not part of the public records of the court. This rule specifically prohibits the divulgence of information concerning arguments and hearings held in chambers or otherwise outside the presence of the public."

At a suppression hearing, the accused challenges the admissibility of inculpatory statements, alleged instruments of crime and alleged fruits of crime on grounds that the Commonwealth has obtained such evidence through violation of constitutional or other rights of the accused. Commonwealth witnesses, including police officers, may testify about the crime, and the involvement and behavior of the accused, or his prior criminal record. The accused may choose to testify or present witnesses to challenge the Commonwealth's evidence. Thus, Rules 323, 326 and 327 provide the trial court with a method for avoiding pre-trial exposure of potential jurors to evidence challenged at suppression hearings, thus eliminating a substantial impediment to selection of an unbiased jury.

These Rules also ensure that a defendant's right to have unconstitutionally seized evidence suppressed will not be chilled by fear that information becoming public at a suppression hearing will make an impartial jury difficult or impossible to select. Cf. *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138' (1968) (government may not use fear of death penalty to dissuade defendant from asserting right to jury trial); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (prosecution cannot use statements obtained from policemen threatened with discharge if they refused to testify); see generally *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).[13]

■ These Rules are designed to promote the clear public interest in having persons accused of crime tried fairly, expeditiously, economically, and only once. If prejudicial publicity occurs, the trial court may have to continue the case, change venue, resort to extensive voir dire to assure that the attitudes of jurors have not been influenced by disclosure, or use the costly and inconvenient device of jury sequestration. See *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). If the trial court takes inadequate remedial measures, an appellate court would be compelled to reverse a conviction, starting the trial process anew.

Essential to the stability and efficiency of our state court system is the requirement that our trial courts control court calendars. See ABA Project on Standards For Criminal Justice, Standards Relating to The Function of The Trial

---

**13.** The Supreme Court in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), found that the "carnival atmosphere" resulting from press coverage of the crime and the trial denied the accused a fair trial. Concluding that such an atmosphere "could easily have been avoided since the courtroom and [the] courthouse premises are subject to the control of the court," id. at 358, 86 S.Ct. at 1520, the Court imposed a duty upon courts to ensure that an accused is tried by a jury not subjected to prejudicial information. Our Rules of Criminal Procedure are in harmony with the principles announced in *Sheppard*.

Judge § 3.8 (Approved Draft, 1972); Standards Relating to Speedy Trial Part I (Approved Draft, 1968). Without Rules 323, 326 and 327, the time and place for trial in this kind of case would in reality be fixed not by courts, but by the timing and degree of premature disclosures of information from suppression hearings. Thus, the Rules, temporarily precluding disclosure of such information wherever necessary, maintain in the courts control over court calendars, assuring uniformity and evenhanded enforcement of criminal justice.

## IV. *Free Press and The Limited Right of Access to Pre-Trial Suppression Hearings*

Petitioners argued that the Constitutions of the United States and Pennsylvania afford the public a right to have open judicial proceedings, including pre-trial motions to suppress. They contended that respondents' orders denied them this right.

 Petitioners incorrectly characterize respondents' orders limiting public access to pre-trial suppression hearings deciding the admissibility of evidence in criminal proceedings as "prior restraints." A prior restraint prevents publication of information or material in the possession of the press and is presumed unconstitutional. See *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977) (when press obtained name and photo of juvenile, court could not prohibit publication); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (striking down order prohibiting publication of inculpatory statements and facts obtained by press).[14] These orders, however, issued in compliance with the Rules of Criminal Procedure, did not prevent petitioners from publishing any information in their possession or from writ-

14. Accord, *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (government could not enjoin publication of secret documents allegedly imperilling national security obtained by press clandestinely); *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) (state may not enjoin publication of "scurrilous" anti-semitic material held by press).

ing whatever they pleased and therefore did not constitute a prior restraint upon publication.[15]

The distinction between restraints upon the content of publication and limitations upon access is well established. For example, in *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), the Court upheld prison regulations restricting press interviews with prisoners, but noted that the regulations did not prohibit publication of any material the press obtained. By contrast, in *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), the Court prohibited the government from enjoining publication of military documents in the hands of the press, but did not suggest that the government lacked the right to restrict access to them by classification.[16]

The Supreme Court of the United States has held that restrictions may be placed upon access of the public and the press to certain information when the restrictions protect constitutional interests. *McMullan v. Wohlgemuth*, 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974), dismissing for want of a substantial federal question, 453 Pa. 147, 308 A.2d 888 (1973) (press access properly restricted by state regulations protecting privacy of welfare recipients); see *Sunbeam Television Corp. v. Shevin*, ──── U.S. ────, 98 S.Ct. 1480, 55 L.Ed.2d 513 (1978), dismissing for want of a substantial federal question, 351 So.2d 723 (Fla. 1977) (upholding state law forbidding reporters from invading privacy by secretly taping interviews).[17] This rule ap-

---

15. Respondents had no authority to impose sanctions on petitioners after publication of any confidential material they might obtain, nor did they attempt to do so. Cf. *Cox Broadcasting Co. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (invalidating civil penalties for publication of public judicial records).

16. The basis of the distinction may be that direct restraints upon expression impose restrictions on human thought and strike at the core of liberty in a way which limitations on access to information do not. See generally Emerson, The System of Freedom of Expression (1970).

17. See generally, Comment, Rights of the Public and the Press to Gather Information, 87 Harv.L.Rev. 1505 (1974); Note, The First

plies the principle that government may, when necessary, protect personal liberties even where enforcement of those liberties may subordinate in limited instances the constitutional interests of others. For example, in *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Supreme Court held that the 13th and 14th amendments empowered Congress to require private schools to desegregate even though desegregation deprived some citizens of the ability to associate for education in the manner they chose. Similarly, in *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), the Court upheld tax exemptions for religious institutions as promoting freedom of religion despite the claim that the exemptions violated the establishment clause. Likewise, the state may recognize property interests in intellectual or artistic creations by prohibiting their publication or broadcast without permission. See Copyright Act, 17 U.S.C. §§ 101 et seq.; *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 575–576, 97 S.Ct. 2849, 2857, 53 L.Ed.2d 965 (1977) (citing cases).

█ The public undoubtedly has a strong interest in the judicial process. "A trial is a public event. What transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947); see *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (need for public trial to protect defendant). The Supreme

Amendment and the Public Right to Information, 35 U.Pitt.L.Rev. 93 (1973); Comment, Right of the Press to Gather Information, 71 Colum.L.Rev. 838 (1971).

The Supreme Court has also held that certain valid governmental interests may be promoted by limiting public access to sources of information. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (prison regulations may prohibit interviews with particular prisoners); *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) (State Department may restrict reporters' foreign travel); *Holden v. Minnesota*, 137 U.S. 483, 491, 11 S.Ct. 143, 146, 34 L.Ed. 734 (1890) (per Harian, J.) (statute upheld excluding reporters from scene of execution despite request by condemned man); accord, *McLaughlin v. Philadelphia Newspapers, Inc.*, 465 Pa. 104, 348 A.2d 376 (1975) (records of attorney disciplinary hearing may be closed); *Philadelphia Newspapers, Inc. v. Disciplinary Board*, 468 Pa. 382, 363 A.2d 779 (1976); see generally, L. Tribe, American Constitutional Law §§ 12–11, 12–19 (1978).

Court of the United States has suggested that the public's interest in judicial proceedings is constitutionally protected by the sixth amendment right of the accused to a public trial. *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (dictum); see *United States v. Cianfrani*, 573 F.2d 835 (3d Cir., filed March 16, 1978); Pa.Const. art. I, § 11.[18] The press serves the important function of informing the public of these public proceedings. *Sheppard v. Maxwell*, supra; see generally ABA Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press (Approved Draft, 1968).[19]

But the Supreme Court has never held that the first or sixth amendments create an absolute right of access to every court proceeding or to all information in the possession of the government or the courts. See *Nebraska Press Ass'n v. Stuart*, supra; *Pell v. Procunier*, supra; *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Both the *Nebraska Press* majority and the concurring opinion of Mr. Justice Brennan recognize that restrictions on access to pre-trial proceedings are different from restraints on the right to publish information available to the public. Supra, 427 U.S. at 564 n. 8, 599–603 & 601 n. 27, 96 S.Ct. at 2805 n. 8, 2822–23 & 2823 n. 27; see *Sheppard v. Maxwell*, 384 U.S. 333, 360–61, 86 S.Ct. 1507, 1521, 16 L.Ed.2d 600 (1966) (suggesting restraints on access to prevent prejudicial disclo-

**18.** A few federal courts of appeals have allowed certain parts of trials to be kept secret. L. Tribe, American Constitutional Law § 12–11 at 629 n. 28 (citing cases). Similarly, courts-martial operate under rules different from those governing civilian trials. See generally *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).

**19.** A few courts have held that the Constitution grants the press access to judicial proceedings. See *CBS, Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975) (civil trial); *State ex rel. Dayton Newspapers, Inc. v. Phillips*, 46 Ohio St.2d 457, 351 N.E.2d 127 (1976) (suppression hearings); see also *United States v. Cianfrani*, 573 F.2d 835 (3d Cir., filed March 16. 1978) (panel) (modifying part of district court order closing pre-trial proceedings where defendant challenged admissibility of intercepted statements; court pointed out that, because defendant pleaded guilty following hearing, case did not present fair trial issue).

sure). In *Oklahoma Publishing*, the Court emphasized that *Nebraska Press* was aimed only at eliminating prior restraints directly prohibiting publication of information and not at any other measures protecting fair trials.

We believe that any limitation on access should be carefully drawn. First, the right of access to court proceedings should not be limited for any reason less than the compelling state obligation to protect constitutional rights of criminal defendants and the public interest in the fair, orderly, prompt, and final disposition of criminal proceedings.[20] Second, access should not be limited unless the threat posed to the protected interest is serious.[21] Third, rules or orders limiting access should effectively prevent the harms at which they are aimed.[22] Finally, the rules or

**20.** Compare *Central South Carolina Chapter v. Martin*, 556 F.2d 706 (4th Cir. 1977), cert. denied, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978) (participants may be ordered not to discuss proceedings in order to protect defendant's right to fair trial), and *Gannett Co. v. DePasquale*, 43 N.Y.2d 370, 401 N.Y.S.2d 756, 372 N.E.2d 544 (N.Y. filed December 19, 1977), cert. granted, ——— U.S. ——, ——— S.Ct. ———, ——— L.Ed.2d ———, (1978) (suppression hearing may be closed to protect right of defendant to an impartial jury), with *Chase v. Robson*, 435 F.2d 1059 (7th Cir. 1970) (court may not, over opposition of defendant, restrain defense and prosecuting attorneys from public comment on case). Cf. *Runyon v. McCrary*, supra (Congress may enforce thirteenth and fourteenth amendment rights of citizens in ways which limit associational rights of others). See generally *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975) (all pre-trial proceedings may not be closed in civil case where no threat to constitutional rights of litigants shown).

**21.** Cf., e. g., *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (passers-by offended by movies shown at drive-in theatre free to look the other way); *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (minor threat to sensibilities of onlookers cannot justify punishment for wearing assertedly offensive message on jacket in public place).

**22.** Cf. *Moore v. City of East Cleveland*, 431 U.S. 494, 500 n. 7, 97 S.Ct. 1932, 1936 n. 7, 52 L.Ed.2d 531 (1977) (statute infringing right of family to live together overturned where ineffective at accomplishing its primary purpose of reducing overcrowding of town); *USDA v. Moreno*, 413 U.S. 528, 536–38, 93 S.Ct. 2821, 2826–27, 37 L.Ed.2d 782 (1973) (statute infringing right of association overturned where ineffective at accomplishing its stated purpose of ferreting out food stamp fraud).

orders should limit no more than is necessary to accomplish the end sought.[23] Because the challenged Rules and orders are closely tailored to protecting both the constitutional right of defendants to a fair trial and the public's interest in the fair and efficient administration of criminal justice, we denied relief.

## V.

### A. *The Challenged Rules and Orders Advance The Public Interest In A Fair and Prompt Criminal Trial*

The Rules and Orders petitioners challenge are designed to protect the right of an accused to trial by an impartial jury. No right is more fundamental to the American system of justice. U.S.Const. Amend. VI; Pa.Const. art. I, § 9; *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Nebraska Press Ass'n v. Stuart*, supra; *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1967); *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

Without a proper method for dealing with extensive publicity concerning a crime, a judicial system runs the serious risk that the jury will reach its verdict based on evidence from sources outside of the courtroom, contrary to the demands of due process. See *Turner v. Louisiana*, supra;

**23.** See *Nebraska Press Ass'n v. Stuart*, supra, 427 U.S. at 563–564, 571, 599–603, 96 S.Ct. at 2805, 2808, 2822–23 (Opinion of the Court per Burger, C. J.; Powell, J., concurring; Brennan, J., joined by Stewart and Marshall, JJ., concurring). Compare, e. g., *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938) (ban on circulating handbills voided as too burdensome even though the ordinance challenged did not purport to regulate the content of ideas propagated), and *Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (striking down ban on loudspeakers providing police unfettered discretion to make exceptions), with *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (parade permit requirement tied to need for public order), and *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding ordinance forbidding only raucous loudspeakers).

*Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209, cert. denied, 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973).[24] As Justice Clark, speaking for the Court in *Sheppard v. Maxwell*, supra, 384 U.S. at 350–51, 86 S.Ct. at 1516, observed:

" '[L]egal trials are not like elections to be won through the use of the meeting-hall, the radio, and the newspaper.' *Bridges v. California*, 314 U.S. 252, 271, 62 S.Ct. 190, 197, 86 L.Ed. 192 (1941). And the Court has insisted that no one be punished for a crime without 'a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power.' *Chambers v. State of Florida*, 309 U.S. 227, 236–37, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940). 'Freedom of discussion should be given the widest range compatible with the essential requirement of the fair and orderly administration of justice.' *Pennekamp v. State of Florida*, 328 U.S. 331, 347, 66 S.Ct. 1029, 1037, 90 L.Ed. 1295 (1946). But it must not be allowed to divert the trial from the 'very purpose of a court system . . . to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures.' *Cox v. State of Louisiana*, 379 U.S. 559, 583, 85 S.Ct. 466, 471, 13 L.Ed.2d 487 (1965) (Black, J., dissenting). Among these 'legal procedures' is the requirement that the jury's verdict be based on evidence received in open court, not from outside sources."

The most damaging of all information from outside the courtroom comes from the pre-trial suppression hearing. A trial court's ability to afford the accused a fair trial is substantially threatened where challenged inculpatory state-

---

**24.** See *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977) (prosecutor's closing remarks must be facts in evidence and legitimate inferences therefrom); *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972) (same).

ments,[25] testimony of the accused bearing on such statements,[26] or other information considered at the suppression hearing becomes public knowledge prematurely. See *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (trial court erred in denying change of venue where accused's statement to police had been televised repeatedly in the area from which the jurors were drawn); *Commonwealth v. Bruno, supra* (conviction reversed where trial court failed to question jurors concerning their exposure to publicized, suppressed confession); *Commonwealth v. Pierce, supra* (conviction reversed and venue changed where news accounts reported defendant's criminal record and confession to crime); see also *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (conviction reversed where jurors read newspaper accounts detailing defendant's criminal record); *United States v. Williams*, 568 F.2d 464 (5th Cir. filed February 27, 1978) (conviction reversed where jurors observed television broadcast concerning defendant's previous conviction). Our Rules are designed to give defendants such as Boyle, Palmer, and Phillips, all charged with murder for crimes generating substantial public attention, the opportunity to be tried, like any other persons accused of crime, on the basis of facts presented at trial.

Further, without proper means for temporarily limiting access to suppression hearings, defendants may be pressured into foregoing their right to challenge the manner in which police obtained inculpatory evidence. A defendant may feel compelled to give up this right out of fear that inculpatory evidence might become public knowledge before or during trial. Such pressure to forego a constitutional right denies due process. E. g., *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (suspect denied due process by being required to waive jury trial to avoid death penalty). Even a defendant who chooses to risk such disclo-

**25.** See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Commonwealth v. Pierce*, supra; *Commonwealth ex rel. Gaito v. Maroney*, 422 Pa. 171, 220 A.2d 628 (1966).

**26.** See *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

sure might be reluctant to testify or present favorable witnesses out of a similar fear of disclosure. The Rules serve to avoid circumstances compelling an accused to forego these important rights.[27]

Prejudicial publicity from pre-trial suppression hearings injures the Commonwealth as well as the accused. Prejudicial disclosures may taint a trial or require a trial court to delay trial until publicity subsides. Neither delayed trials nor retrials present as favorable opportunities for establishing truth as timely first trials. By precluding prejudicial disclosures arising from pre-trial suppression hearings, the Rules promote the speedy and effective enforcement of the criminal laws, ensure swift convictions deterring crime, see A. von Hirsch, Doing Justice (1976), and avoid unnecessary expenditures of public funds and judicial resources.[28]

■ Significantly, the orders here challenged were requested by the defendants. Rule 323(f), upon which the orders were based, provides that only a defendant may request a closed suppression hearing to protect his constitutional rights. See *Commonwealth v. Bennett,* 445 Pa. 8, 11–12 n. 3, 282 A.2d 276, 278 n. 3 (1971), following *United States ex rel. Bennett v. Rundle,* 419 F.2d 599 (3rd Cir. 1969) (court's sua sponte closure of suppression hearing violated defendant's right to public trial). This provision denies the prosecution the power to prevent disclosure of information

---

**27.** The danger that publicity may deter the accused from exercising his right to suppress evidence and hamper the ability of our state system of criminal justice to afford the accused a fair trial is serious and continuing. Justice Frankfurter observed:

"Not a Term passes without this Court being importuned to review convictions, had in States throughout the country, in which substantial claims are made that a jury trial has been distorted because of inflammatory newspaper accounts—too often, as in this case, with the prosecutor's collaboration—exerting pressures upon potential jurors before trial and even during the course of trial, thereby making it extremely difficult, if not impossible, to secure a jury capable of taking in, free of prepossessions, evidence submitted in open court."

*Irvin v. Dowd,* 366 U.S. 717, 729, 81 S.Ct. 1639, 1646, 6 L.Ed.2d 751 (Frankfurter, J., concurring).

**28.** Indeed, the Commonwealth agreed to each defendant's request for special orders in these cases of widespread interest.

concerning a criminal case, "gag" participants in the proceeding, or deprive an accused his right to open judicial proceedings. See note 8 supra (use of Rules 326 & 327).

Cases from federal courts of appeals demonstrate the importance of focusing on the defendant's protection of his constitutional rights. In *Chase v. Robson,* 435 F.2d 1059 (7th Cir. 1970), the seventh circuit invalidated an order opposed by the defendants forbidding the defendants and attorneys for both prosecution and defense from publicly commenting on the case. See *In re Oliver,* 452 F.2d 111 (7th Cir. 1971). The order in *Chase* also covered all information about the case, whereas the challenged orders here involve only pretrial suppression hearings, generating information most likely to be extremely prejudicial to the accused. See notes 7 & 8 supra. Similarly, in. *Central South Carolina Chapter v. Martin,* 556 F.2d 706 (4th Cir. 1977), cert. denied, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978), the fourth circuit, while it approved a ban on pre-trial discussion of prejudicial matters not of public record, specifically noted the defendant was free to seek a modification of the order as it affected him.

Here, respondents entered orders in murder cases of great notoriety. In *Commonwealth v. Boyle,* the defendant is a national figure, accused of a crime of widespread attention. Publicity in this case had already compelled this Court to grant a change of venue. In *Commonwealth v. Palmer* and *Commonwealth v. Phillips,* petitioners averred that the crimes were also of widespread interest in the community. Thus, the challenged orders were aimed at averting a substantial threat to both the fundamental rights of the defendants and the public interest in prompt and orderly administration of criminal justice.

B. *The Orders Imposed Only a Limitation on Access to Pre-Trial Suppression Hearings, Carefully Designed to Protect Rights of The Accused and Interests of The Public*

The orders here are limited to pre-trial suppression hearings, which involve materials likely to be prejudicial to

defendants. See supra notes 6–8 and accompanying text. In *Central South Carolina Chapter v. Martin,* supra, the fourth circuit demonstrated the significance of avoiding pre-trial disclosure of prejudicial information. The court invalidated parts of a pre-trial order prohibiting parties from mingling with the press on sidewalks adjacent to the courthouse and barring artists from sketching jurors, but upheld that part of the order prohibiting extrajudicial statements of participants "which might divulge prejudicial matter not of public record." In *United States v. Gurney,* 558 F.2d 1202 (5th Cir. 1977), cert. denied sub nom. *Miami Publishing Co. v. Krentzman,* ––– U.S. –––––, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), the fifth circuit reaffirmed the well established rule that even during an open, public trial, a court may limit public access to sidebar and bench conferences. Cf. Tribe, supra note 18. The same jurisprudential considerations justifying the traditional sidebar rule support our Rules authorizing respondents' pre-trial suppression hearing orders. Here, as in *Martin* and *Gurney,* the orders of respondents carefully preserve the integrity of juror deliberations.

*United States v. Cianfrani,* 573 F.2d 835 (3d Cir. filed March 16, 1978), is not to the contrary. In *Cianfrani,* a panel of the third circuit modified part of a district court order closing a pre-trial hearing where the court determined the admissibility of intercepted statements and other evidence. After the pre-trial hearing, the defendant pleaded guilty. Thus, the panel was not presented with a case where such orders were necessary to preserve the defendant's right to a fair trial. Nor do we reach a conclusion contrary to *CBS, Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975), where the sixth circuit invalidated an order forbidding all participants and witnesses from discussing with the press any aspect of a celebrated civil suit. This order was not entered to protect the constitutional rights of any party, and restricted access to all information concerning the case not public, rather than to specific information likely to impede a fair trial.

Further, all three trials have been completed, and the challenged orders may have expired. See Rule 323(g); note

10 supra and accompanying text. The statute in *McMullan v. Wohlgemuth,* supra, permanently prevented agents of the state from revealing to the press and the public names of any Pennsylvania welfare recipients. This statute, more restrictive than the orders here, was upheld by our Court and the Supreme Court of the United States against an access challenge. 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974), dismissing for want of a substantial federal question, 453 Pa. 147, 308 A.2d 888 (1973). Similarly, in *Garrett v. Estelle,* 556 F.2d 1274 (5th Cir. 1977), prison regulations permissibly denied newsmen the right to film executions for broadcast, depriving the public of certain information about these events. See *Holden v. Minnesota,* 137 U.S. 483, 11 S.Ct. 143, 34 L.Ed. 734 (1890) (upholding statute excluding reporters from scene of execution despite request by condemned man). The challenged orders imposed only a limitation on access to pre-trial suppression hearings, no greater than necessary to accomplish their purpose. Accord, *United States v. Gurney,* supra (upholding district court order limiting access to sidebar conferences).

Moreover, the Rules and orders here do not contain the inherent ambiguities and potential for chilling condemned in *Nebraska Press.* When the court closes a pre-trial suppression hearing, there are no injunctions forbidding publication or requiring the press to guess at what it may or may not print. Thus, the judgment of the newspaper editor remains unimpaired. Compare *Nebraska Press Ass'n v. Stuart,* supra (certain information arguably, but not certainly, included in prohibition against publication), and *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 256 -57, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974) ("right of reply" statute impermissibly infringed on editor's discretion), with *Pittsburgh Press Co. v. Pittsburgh Human Relations Commission,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) (upholding prohibition against sex-classified advertising where discriminatory hiring was unlawful and editor could easily determine from face of advertisement if it was forbidden), and *Pell v. Procunier,* supra (editors not forbidden to print any information gathered in prison).

## C. *No Other State Procedural Device Eliminates Prejudical Disclosure*

Courts in the past have attempted to deal with prejudicial disclosure by lengthy voir dire of potential jurors, extensive continuances, burdensome sequestration, and cautionary instructions. Because these techniques do not eliminate prejudicial disclosure, but only may reduce some of its effects, all have proven unsatisfactory in many cases. Only one other method, change of venue, may in some cases put a case beyond the physical range of disclosure, but it may not be effective in cases of statewide or national attention, such as *Commonwealth v. Boyle,* or *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Further, pre-trial publicity may follow a case to its new venue.

Through voir dire, a court attempts to minimize the effect of pre-trial publicity by excluding from the jury those whom publicity has biased. But it cannot hope to eliminate all jurors who have been exposed to prejudicial information. In a highly publicized case, effective voir dire may distort the composition of the jury by screening out all those who take an active interest in news and public affairs. Neither a defendant nor the Commonwealth has an interest in seating such a jury. Other methods of dealing with prejudicial disclosure, such as sequestration, continuances, or cautionary instructions to the jury, do not realistically reduce premature prejudicial disclosure to which a jury is exposed.

Finally, many of the methods for eliminating the effects of prejudicial disclosure have other drawbacks. A continuance allows evidence to become stale and lengthens the period during which charges remain unresolved and the accused confined or held on bail pending disposition of the charges. Cf. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975) (restraints on liberty caused by prolonged detention). Changes of venue and sequestration pose further problems of administration for courts and inconvenience for all persons connected with a case.

A rule of general application directly meeting the problem of prejudicial disclosure is indeed an appropri-

ate procedural device for the administration of a state court system of criminal justice. The Rules and orders challenged here meet that need by temporarily limiting access to pre-trial proceedings most likely to involve prejudicial material which, if disclosed, could deprive the defendant of a fair trial and impose unneeded burdens on the public and the judicial system. The challenged orders protected the defendants from disclosure by attorneys and witnesses participating in suppression hearings under Rule 323. Such disclosures can be just as prejudicial as public exposure of the proceedings.[29] Short of gagging the press, which is presumed to be unconstitutional, *Oklahoma Publishing Co. v. District Court,* supra; *Nebraska Press Ass'n v. Stuart,* supra, or permanently depriving the press access to all information about a case, we believe our Rules and these orders are the most effective means of reducing premature prejudicial disclosure.

**29.** Petitioners also asserted that the orders entered by respondents directing participants in the pre-trial proceedings not to discuss the proceedings were overbroad. We did not agree.

"[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964), quoted in *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). A challenge solely to the breadth of a governmental regulation recognizes the lawfulness of the type of regulation; it attacks only the extent of the limitation as insufficiently related to the legitimate governmental interest.

The orders directing participants in the pre-trial proceedings not to discuss the proceedings, like the other orders, were designed to prevent harm to the accused's right to a fair trial and the public interest in prompt, orderly, and final administration of criminal justice by temporarily limiting access to information which might produce undue publicity. See notes 7 & 8 supra. If a participant could describe the events of the pre-trial proceedings, the court's other orders would be rendered useless.

Hence, respondents, through the Rules, had to be able to control the disclosures of every participant in those proceedings. We therefore conclude that the portions of these orders restricting comment upon the suppression hearings by participants were as closely tailored to eliminating prejudicial publicity as were the portions closing the suppression hearings and impounding the records thereof. Therefore, these portions of the orders cannot be considered overbroad.

## VI. *Conclusion*

This Court is fully aware of the great societal benefits our citizenry derives from access to all open court proceedings. Manifestly, that freedom has and continues to contribute significantly to the attainment of the effective administration of justice.

We must also be mindful of the Commonwealth's obligation to protect the right of the accused to a constitutionally required fair and speedy trial. Similarly, it must be recognized that the Commonwealth entertains a traditionally strong interest in protecting the fairness and integrity of criminal convictions obtained in its court system.

Adequate consideration must also be accorded the very pronounced public interest in having its system of criminal justice function so that jury trials are conducted promptly, fairly, and with finality. Due recognition must be given rules and procedures designed to achieve prompt and fair trials without the hazards of imposing on the state court system unnecessary and avoidable burdens such as retrials and extended trial delays. This is the true mission of the Rules of Criminal Procedure.

Experience has plainly demonstrated that premature disclosure of pre-trial suppression material creates a heavy and unnecessary burden upon the judicial process and adversely affects these public interests. Rules 323, 326 and 327 authorize a court in an appropriate case, if necessary, to limit or postpone access to pre-trial suppression hearing material so that the case may proceed in an orderly and timely fashion in an atmosphere free from the hazards and prejudice which may be engendered by the premature disclosure of suppression material, the admissibility of which is yet to be judicially determined. It must be concluded here that the public interest in avoiding unfair and delayed trials and retrials outweighed the postponement of petitioners' access.

We concluded on the record as presented by petitioners that respondents' orders, which limited access to pre-trial

suppression hearings in murder cases which had received great public attention, did not deny petitioners any clear legal right. We therefore denied petitioners the state remedies they sought. See *Central South Carolina Chapter v. Martin*, supra; *United States v. Gurney*, supra; but see *State ex rel. Dayton Newspapers, Inc. v. Phillips*, 46 Ohio St.2d 457, 351 N.E.2d 127 (1976). These orders were entered pursuant to the Pennsylvania Rules of Criminal Procedure, a set of state rules designed to administer criminal justice fairly and efficiently. The orders were closely tailored to meet the problems of prejudicial disclosure resulting from suppression hearings.

Accordingly, special relief was properly denied petitioners and our orders are reinstated in conformity with this opinion.

PACKEL, J., did not participate in the consideration of this opinion.