381 A.2d 865

**In re District Attorney's Investigation of Police Shooting of Jose REYES.**

**Petition of Gerald SALERNO, Charles Gubler, Steven Maggiancaldo, Andrew Yaletsko, Howard Davis, James Dorwart, David Ridgeway, Sid Mullins and Robert Butler.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1977.

Decided Dec. 23, 1977.

Burton A. Rose, Philadelphia, for petitioner.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Joseph Murray, Philadelphia, for respondent.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-EROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

O'BRIEN, Justice.

This matter is before us on a petition for a writ of prohibition filed by Philadelphia Police Officers Gerald Salerno, Charles Gubler, Steven Maggiancaldo, Andrew Yalet-

sko, Howard Davis, James Dorwart, David Ridgeway, Sid Mullins and Robert Butler.[1]

On July 2, 1977, Jose Reyes was shot to death in Philadelphia. Police Officer Gerald Salerno was alleged to be the person who shot Reyes. The Philadelphia District Attorney's office, through its homicide division, began an investigation into the circumstances of the Reyes-Salerno shooting.

On August 3, 1977, five of the above-mentioned police officers were requested to appear at the office of the chief of the homicide division. On advice of counsel, the five officers appeared, but refused to make any statements concerning the facts surrounding the Reyes-Salerno shooting.

On August 5, 1977, the district attorney's office filed a petition with Judge Merna B. Marshall of the Court of Common Pleas of Philadelphia. The gravamen of the petition alleged that the Philadelphia District Attorney, pursuant to § 8-409 of the Philadelphia Home Rule Charter, had investigative subpoena power. Pursuant to § 8-409 of the charter, the district attorney asked the court to confirm such subpoena power. On August 18, 1977, the court, per Judge Marshall, issued an order:

" . . . [T]hat the District Attorney of Philadelphia *may* subpoena the following police officers to appear and give testimony and other evidence regarding the fatal shooting of Jose Reyes." (Emphasis added.)

On August 23, 1977, the petitioners filed a petition for a writ of prohibition in this court. On August 29, 1977, a justice of this court issued a stay of the proceeding pending disposition of the petition for writ of prohibition by the full court. On September 14, 1977, this court granted a rule to show cause, returnable on October 17, 1977. On that date, the petition was argued before the full court.

1. § 201 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 201, 17 P.S. § 211.201 provides in relevant part:

"The Supreme Court shall have original but not exclusive jurisdiction of . . . (2) all cases of mandamus or prohibition to courts of inferior jurisdiction . . .."

The initial inquiry is whether a writ of prohibition is the proper remedy in the instant case.

In *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 102, 61 A.2d 426, 430 (1948), this court stated:

" . . . . The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise: see First Congressional District Election, 295 Pa. 1, 13, 144 A. 735, 739, 740, and cases referred to in the dissenting opinion in *Philadelphia County Grand Jury Investigation Case,* 347 Pa. 316, 330–334, 32 A.2d 199, 206–208; also *Roche, U. S. District Judge v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185; *United States Alkali Export Association, Inc. v. United States,* 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554. As pointed out in the last cited authority, 325 U.S. at page 203, 65 S.Ct. at page 1125, 'appellate courts are reluctant to interfere with decisions of lower courts, even on jurisdictional questions, which they are competent to decide and which are reviewable in the regular course of appeal. . . . The [extraordinary] writs may not be used as a substitute for an authorized appeal.' "

In *Commonwealth v. Mellon Nat. Bk. & Tr. Co.,* 360 Pa. 103, 107, 108, 61 A.2d 430, 433 (1948), this court further defined the scope and availability of a Writ of Prohibition:

"Ferris in Extraordinary Legal Remedies (p. 439 et seq.) said: 'It is well settled that a writ of prohibition may not be used to usurp or perform the functions of an appeal, writ of error or certiorari, or to correct any mistakes, errors or irregularities in deciding any question of law or fact within its jurisdiction. *The office of the writ, as at*

*common law, is to prevent an unlawful assumption of jurisdiction, not to correct mere errors and irregularities in matters over which the court has cognizance.* Where the general scope and purpose of the action is within the jurisdiction of the court, any error or overstepping of its authority in a portion of its judgment, or any other error in its proceedings, *is only ground for a review or appeal,* and not prohibition. That is to say, where there is authority to do the act, but the manner of doing it is improper, the writ will not lie. In other words, whatever power is conferred may be exercised, and, if it be exercised injudiciously, erroneously or irregularly, it amounts to error merely and not to a usurpation or excess of jurisdiction. In such a case, however gross the error, irregularity or mistake, the writ does not lie, not because, as is sometimes erroneously or irregularly, it amounts to error merely or such remedies are inhibited, but for the reason that there has been no usurpation or abuse of power.' (Emphasis added.)

"The American and English Encyclopaedia of Law (2d Ed.), Vol. 23 at p. 200 sums up the law applicable to writs of prohibition as follows: 'Where the inferior court has jurisdiction of the matter in controversy, prohibition will not lie. The writ does not lie to prevent a subordinate court from deciding erroneously or from enforcing an erroneous judgment in a case in which it has a right to adjudicate, and it matters not whether the court below has decided correctly or erroneously; its jurisdiction of the matter in controversy being conceded, prohibition will not lie to prevent an erroneous exercise of that jurisdiction. The exercise of power which it is sought to prohibit must be wholly unauthorized by law. Mere errors or irregularities in the proceedings which do not go to the jurisdiction . . . of the inferior court to take the proposed action, and the merits of the action will not be considered.' To the same effect is 50 Corpus Juris, sec. 3, p. 655." (Footnote omitted.)

In *Com. ex rel. Specter v. Shiomos*, 457 Pa. 104, 107–108, 320 A.2d 134, 136 (1974), this court synthesized the *Carpentertown* and *Mellon Bank* rationales by saying:

" . . . Thus, under Carpentertown, a two-pronged test was set forth for this Court to follow when considering the granting of a Writ. The first aspect of the test is whether adequate remedies are provided at law to afford relief. . . .

"The second prong of the test is whether there is extreme necessity for the relief requested to secure order and regularity in judicial proceedings. . . . "

A. Adequate remedy at law.

In the instant case, the court below issued an order authorizing the district attorney to issue subpoenas to nine Philadelphia Police Officers in connection with that office's homicide investigation of possible criminal culpability in the Reyes shooting. The authority proffered by the district attorney for his authority to issue investigative subpoenas was § 8–409 of the Philadelphia Home Rule Charter. Section 8–409 provides:

"Every officer, department, board or commission authorized to hold hearings or conduct investigations shall have power to compel the attendance of witnesses and the production of documents and other evidence and for that purpose it may issue subpoenas requiring the attendance of persons and the production of documents and cause them to be served in any part of the City. If any witness shall refuse to testify as to any fact within his knowledge or to produce any documents within his possession or under his control, the facts relating to such refusal shall forthwith be reported to any one of the Courts of Common Pleas of Philadelphia County and all questions arising upon such refusal and also upon any new evidence not included in the report, which new evidence may be offered either in behalf of or against such witness, shall as promptly as possible be heard by such court. If the court shall determine that the testimony or document required

of such witness is legally competent and ought to be given or produced by him, the court may make an order commanding such witness to testify or to produce documents or do both and if the witness shall thereafter refuse so to testify or so to produce documents in disobedience of such order of the court, the court may deal with the witness as in other cases."

No subpoenas pursuant to § 8–409 have been issued by the district attorney to the petitioners. The record, however, is clear that none of the police officers intends to comply with the district attorney's subpoenas. Petitioners contend that the district attorney's office is not within the phrase: "Every officer, department, board or commissioner authorized to hold or conduct investigations" of § 8–409, and, therefore, the district attorney has no authority to issue subpoenas. This argument, however, goes not to the authority of the Court of Common Pleas to compel compliance, but rather is a statutory construction argument cognizable on appeal.

In *Cathcart v. Crumlish*, 410 Pa. 253, 254–55, 189 A.2d 243, (1963), this court determined that an adequate remedy at law existed to challenge the district attorney's alleged subpoena authority under § 8–409 of the Philadelphia Home Rule Charter and, therefore, the court vacated an equity decree which dismissed a bill in equity seeking to enjoin the issuance of the subpoena. The court, in *Cathcart*, summarized the pertinent facts as follows.

"In pursuance of an investigation he was conducting, the district attorney of Philadelphia issued subpoenas commanding appellants to appear at his office on November 27, 1961 to testify on certain matters then under investigation. These subpoenas were issued on the alleged authority of section 8–409 of the Philadelphia Home Rule Charter. Appellants filed complaints in equity on November 22, 1961, seeking to enjoin the district attorney from requiring them to appear and testify. After hearing argument, the lower court dismissed appellants' complaint, holding, inter alia, that section 8–409 of the Philadelphia

Home Rule Charter empowered the district attorney to issue subpoenas. An appeal to this Court was then taken."

The court, in *Cathcart*, at pages 255–57, 189 A.2d at page 244, went on and stated:

" . . . since section 8–409 of the Philadelphia Home Rule Charter prescribes a specific statutory procedure wherein the validity of subpoena issued under this section may be tested. See *Stahl, Attorney General v. Insurance Company of North America*, 408 Pa. 483, 486, 184 A.2d 568 (1962). This section provides for the district attorney to report any non-compliance to a common pleas court which shall promptly hear arguments on the validity of the subpoena. Under the Act of March 21, 1806, P.L. 558, 4 Sm.L. 326, 46 P.S. § 156, it has long been held in various contexts that where a remedy or method of procedure is provided by an act, those procedures should be followed exclusively. See, e. g., *Knup v. Philadelphia*, 386 Pa. 350, 126 A.2d 399 (1956). Applying this principle .to the case before us, we conclude that appellants cannot question the validity of the subpoena until they are called before the common pleas court." (Footnotes omitted.)

\* \* \* \* \* \*

" . . . The remedy is adequate since appellants will suffer no irreparable harm, or for that matter any harm at all, if they have to wait until the district attorney invokes the enforcement procedures before they can contest the subpoena. . . . "

Moreover, no petition for enforcement of the administrative subpoena has been filed pursuant to § 8–409 of the Philadelphia Home Rule Charter. Rather, the district attorney has sought a "confirmation" of authority under the Charter provisions to issue the subpoena.

In *Pa. Crime Commission Subpoena*, 453 Pa. 513, 516–518, 309 A.2d 401, 404 (1973), this court, in a similar situation of dealing with administrative subpoenas, stated:

"Preliminarily, we note that appellants' motion to quash the subpoena in the Common Pleas Court was improper.

Appellants cannot contest the validity of the subpoena until the Commission invokes enforcement procedures in either the Courts of Common Pleas or the Commonwealth Court. This is so because, unlike a judicial subpoena, the Crime Commission is not given power to enforce compliance. Therefore, individuals are not placed in the dilemma of having to disobey the Commission's subpoena at their peril in order to contest its validity. Failure to comply is not punishable by fine or imprisonment unless it continues after a court has ordered compliance. See *Cathcart v. Crumlish*, 410 Pa. 253, 189 A.2d 243 (1963); *Alpha Club of West Philadelphia v. Pennsylvania Liquor Control Board*, 363 Pa. 53, 68 A.2d 730 (1949). (Footnote omitted.)

\* \* \* \* \* \*

"Until the Commission invokes the aid of a court to enforce compliance with its subpoenas, the court is without jurisdiction in the matter. To hold otherwise would be to ignore the obvious possibility that the Commission may elect not to enforce its subpoenas. Until the decision is made by the Commission to seek enforcement the subpoena is no more than an invitation to appear which can be ignored without peril by the recipient. Therefore, the premature initiation of equitable proceedings by the appellants is in effect a nullity and it is incapable of divesting the Commission of its legal right to elect to proceed to seek enforcement in the forum of its choice as provided under the statutes." (Footnote omitted.)

*Cathcart, supra,* established that § 8–409 of the Philadelphia Home Rule Charter provides an adequate remedy at law to challenge the district attorney's subpoena power. An adequate remedy at law existing, a writ of prohibition is not available. See *Pa. Crime Commission Subpoena, supra.*

Moreover, petitioners' argument does not go to the subject matter jurisdiction of the Court of Common Pleas to entertain the petition; rather it goes to whether the district attorney is a member of the class of city officers within the enumeration of § 8–409. To issue a writ of prohibition in the instant case would require its issuance every time a

party objected to the opposing side's statutory standing or common-law authority for certain action.

B. Necessity for the relief requested in order to secure order and regularity in the judicial proceedings.

█ The second prong of the Shiomos test requires that the granting of the writ of prohibition "secure order and regularity in judicial proceedings." See Shiomos, supra, 457 Pa. at 108, 320 A.2d at 136.

In the instant case, the granting of the writ would seem to defeat rather than further order and regularity of judicial proceedings. No subpoenas have been issued pursuant to the order of the court below. While the record indicates that the police officers, if subpoenaed, would not comply, the record does not show whether such noncompliance would be based on a valid exercise of the officers' constitutional rights against self-incrimination.

The Court, in Cathcart, supra, 410 Pa. at 256–57, 189 A.2d at 245, stated:

". . . The remedy is adequate since appellants will suffer no irreparable harm, or for that matter any harm at all, if they have to wait until the district attorney invokes the enforcement procedures before they can contest the subpoena. Unlike a judicial subpoena, public officers who are allegedly vested with subpoena power under section 8–409 are not given the power to enforce compliance. Disobedience is not punishable by imprisonment or fine unless it continues after a court has ordered compliance. See Annotation to § 8–409, Philadelphia Home Rule Charter. Therefore, appellants are not placed in the unfortunate dilemma of having to disobey the district attorney's subpoena at their peril in order to contest their validity."

Cathcart makes clear that the petitioners need not be held in contempt to challenge the district attorney's authority under the Philadelphia Home Rule Charter. Petitioners can raise any challenges or possible defense to the subpoena at the

time the petition to enforce is filed. See *Pa. Crime Commission Subpoena, supra.*

In *Com. ex rel. Specter v. Freed,* 424 Pa. 508, 228 A.2d 382 (1967), the Philadelphia district attorney subpoenaed M. Philip Freed, a magistrate. The district attorney's theory for his authority to issue a subpoena was the same as this case, § 8–409 of the charter. A plurality opinion (Justice Roberts, joined by Justices Jones and O'Brien) stated that § 8–409 of the charter did not grant subpoena power. Justice Cohen filed a concurring opinion in which he reached the same result but specifically refused to address the charter issue. Justice Eagen, now Chief Justice, filed a concurring opinion, joining the result reached but again not ruling on the charter issue. C. J. Bell dissented. *Specter* is instructive in the instant case, not for its discussion of the merits of the district attorney's subpoena power under the charter but rather for its procedural posture. In *Specter,* the district attorney issued the subpoena and upon Freed's failure to comply, the district attorney went into Common Pleas Court to enforce the subpoena. Common Pleas Court agreed with the district attorney and ordered compliance. Freed appealed from that order to this court. *Specter* does not control the instant case. Initially *Specter* is a plurality opinion by three members of the court and, therefore, it is not binding precedent. Moreover, in *Specter,* the proper procedure was used. An appeal was taken after a compliance order. All that we decide today is that a writ of prohibition is not the proper procedure or remedy to challenge the district attorney's alleged subpoena power under § 8–409 of the Philadelphia charter.

Under the facts of the instant case, i.e. no subpoenas having been issued, and no petition to enforce subpoenas having been filed, we are of the opinion that the second prong of the *Shiomos* test has not been met. Writ of prohibition is denied.

The district attorney, in his brief, requests that this court take plenary jurisdiction pursuant to § 205 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L.

673, No. 223, art. II, § 205, 17 P.S. § 211.205 (Supp.1977). The request for plenary jurisdiction is denied.

Petition for writ of prohibition is denied and the district attorney's request for assumption of plenary jurisdiction is denied.

EAGEN, C. J., and NIX and MANDERINO, JJ., concur in the result.

PACKEL, J., files a dissenting opinion.

PACKEL, Justice, dissenting.

In *Commonwealth ex rel. Specter v. Freed,* 424 Pa. 508, 228 A.2d 382 (1967), six of the seven Justices agreed that the court of common pleas could not enforce an order to compel testimony for a district attorney investigation. Mr. Justice Roberts, speaking for himself and two of the Justices, concluded that the district attorney's power to obtain the production of witnesses was "by court issued subpoenas, at preliminary hearings, grand jury proceedings and trials" (424 Pa. at 519, 228 A.2d at 387). Mr. Justice Cohen stated quite positively: "I concur with the majority's decision that the District Attorney of Philadelphia does not possess the power to issue subpoenas" (424 Pa. at 519, 228 A.2d at 388). Mr. Justice Musmanno, using some of his more moderate language, concluded: "What the district attorney is arguing for, in effect, is that we allow him to make himself a one-man grand jury. Obviously this is constitutionally impossible." (424 Pa. at 525, 228 A.2d at 390). There were alternative bases for the conclusion reached by the court, i. e., whether the district attorney of Philadelphia should be viewed as a state official or as a municipal official. On either basis the answer was the same—the district attorney does not have the power to subpoena for general investigative purposes and the court may not enforce any such alleged power.

In disregard of this lack of power the court below acted on a petition filed by the district attorney that merely alleged a police shooting and made no reference to a case or contro-

versy. The petition prayed for a finding that the pleading of the Fifth Amendment by police officers would be improper and prayed for an order to police officers to answer questions, concerning the shooting, as put to them by the district attorney. After an argument and briefs of counsel the court below ordered and decreed that the district attorney can subpoena the officers.

The order and decree was not final nor appealable. Counsel for the policemen seek in this Court a writ of prohibition on the ground that the court below lacked power or abused its discretion in sustaining the assertion of power by the district attorney.

The ancient history of the writ of prohibition and its modern purpose are well described in *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 97–98, 61 A.2d 426, 428 (1948), as follows:

"Prohibition is a common law writ of extremely ancient origin,—so ancient, indeed, that several forms for its use are set forth in Glanville, the earliest known treatise on English law (1187); in the following century it was recognized by Bracton as an established part of the common law. Being a prerogative writ of the king it was originally employed exclusively by the Court of King's Bench, but subsequently issued out of the Courts of Chancery, Common Pleas and Exchequer as well. Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior and an inferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful powers and jurisdiction."

Blackstone, in his Commentaries, Book III, Ch. 7, p. 112, described the writ in terms of keeping a court within its proper bounds:

"A writ issuing properly out of the court of king's bench, being the king's prerogative writ . . . directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, did not belong to that jurisdiction . . .."

The vital importance of the writ for the due administration of justice is emphasized in *Schlesinger Petition,* 367 Pa. 476, 483, 81 A.2d 316, 319 (1951), as follows:

"That this Court has power to issue a writ of prohibition under the circumstances here present cannot be questioned seriously: *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 61 A.2d 426. 'Such a writ is proper not only wherever a court acts outside of its jurisdiction but also when there is an abuse of jurisdiction. As stated in High, Extraordinary Legal Remedies (2d ed.) 604, "The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice, that every tribunal vested with judicial functions should be confined strictly to the exercise of those powers with which it has been by law entrusted" '; *McNair's Petition,* 324 Pa. 48, 64, 187 A. 498. See also *Commonwealth v. Mellon Nat. Bk. & Tr. Co.,* 360 Pa. 103, 61 A.2d 430."

It is important to keep in mind that the specific issue here involved is the jurisdiction of a trial court to enter an order or decree relating to testimony concerning a matter which is not before it directly or indirectly, other than as a bare petition to get the testimony. There is no statutory provision or any common law basis for litigation of the bare issue, disassociated from an actual case or legal controversy, of whether a person can be compelled to testify. Courts have inherent and statutory powers as to controversies and litigation and, in addition, have been given statutory jurisdiction to enforce investigative powers of diverse agencies. In this instance, however, we have the acknowledged lack of statu-

tory or inherent power in the district attorney and, by reason thereof, a lack of jurisdiction in the court to confer such a power on the district attorney.

Although the case conceivably might be heard on a subsequent appeal, that is open to many conjectures. There could be a question of whether a police officer could or should risk contempt in order to have an appealable order. Even more serious is that the use of the assertive power and compliance, or the abandonment of the investigation, might well render the issue moot. This would mean that the issue could not be tested. In any event, this appears to be a classical case for this Court to assert its supreme power to prevent an inferior court from going out of its bounds in disregard of a prior holding of this Court. "The extraordinary Writ of Prohibition is issued as a matter of discretion to prevent a lower court from acting outside its jurisdiction and to prevent it from abusing its discretion. *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). It is often used where the trial judge has acted in a blatantly unlawful manner. [Citations omitted]." *Pirillo v. Takiff,* 462 Pa. 511, 519, 341 A.2d 896, 899–900 (1975).

It is the function of courts in proper circumstances to exercise their sound discretion in commanding testimony in actual cases before them, in either preliminary or final hearings, in grand jury proceedings, in trials and in administrative matters to enforce subpoenas pursuant to statutory authority. If this were only an ordinary question of possible abuse of discretion, prohibition might well be inappropriate. Yet, public concern, particularly in the criminal law field, with respect to the inadequacy of an ordinary appeal as well as proper order and regularity in judicial proceedings calls for the use of the writ of prohibition. *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134 (1974). The due administration of justice calls for a prompt blocking of an attempt of a lower court to exercise jurisdiction which it does not have. If a judge or the district attorney is to assert the bare power to question persons under oath for any purpose, it is for the legislature to say so. The Court could

then consider the constitutionality of such action. This Court, however, should not sanction the assertion of such a power which the legislature has not granted. It is incumbent upon this Court under its general supervisory authority over all the courts to prohibit in no uncertain terms the assertion of jurisdiction by the court below in a novel non-litigation proceeding which this Court had already clearly held is outside the jurisdiction of the court.