386 A.2d 527

**Ralph OTTAVIANO**

v.

**The Honorable Alexander BARBIERI**

**and**

**The Honorable Louis Vignola, President Judge Traffic Court of Philadelphia.**

Supreme Court of Pennsylvania.

Argued April 10, 1978.

Decided April 28, 1978.

Clifford J. Gabrellas, Richard G. Phillips, John W. Morris, Philadelphia, for petitioner.

Lawrence A. DiSipio, Jonathan Vipond, III, Frederick L. Voight, Philadelphia, for respondents.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION

PER CURIAM.

Petitioner, Ralph Ottaviano, as an employee of the Traffic Court of Philadelphia, filed a Petition for Writ of Prohibi-

tion directed against the Honorable Alexander Barbieri, Administrator for the court system of Pennsylvania and the Honorable Louis Vignola, President Judge of the Traffic Court of Philadelphia. This action was prompted by the issuance of a directive by respondent Vignola, dated March 22, 1978, advising all employees of the Traffic Court that within seven (7) days of the notice they were to "cease and desist all Partisan Political Activity or face removal from active employment status at the Philadelphia Traffic Court." It was further determined that said directive was issued pursuant to a series of regulations promulgated by respondent Barbieri.

Petitioner is presently serving as a member of the Fifth Ward Democratic Executive Committee after having been duly elected in the primary election in the Spring of 1976. Petitioner's term of office will expire on May 22, 1978. Prior to the receipt of the March 22nd directive, petitioner had filed as a candidate for the same office, to be filled in the primary election of May 16, 1978 for a term of two years. It was further established that the March 22nd directive was issued after the time prescribed under the Election Code within which candidates would be allowed to withdraw nominating petitions and to have their names removed from the ballot. 25 P.S. §§ 2873(d), 2874 (1963 & Supp. 1977–78).

In the instant action petitioner has challenged the Administrator's right to promulgate the aforementioned regulations and further asserts that the belated communication of the Traffic Court directive to him has caused an unreasonable hardship to him and to the constituents within his Ward.*

We find our decision in *In Re: Prohibition of Political Activities,* 473 Pa. 554, 375 A.2d 1257 (1977) to be controlling. Therefore, we grant petitioner's third prayer, i. e., that the

---

* Petitioner conceded at oral argument that the constitutionality of the regulations prohibiting political activities by court employees was determined adversely to his position by our decision in *In Re: Prohibition of Political Activities*, 473 Pa. 554, 375 A.2d 1257 (1977).

respondents be prohibited from preventing petitioner from serving the remainder of his elected term, which is scheduled to terminate on May 22, 1978. Said prohibition bars any type of disciplinary action by respondents against petitioner for the performance of his duties in that office for the remainder of the present term. Petitioner's remaining requests are denied. Since the statutory period during which petitioner could have withdrawn his name as a candidate in the May 16, 1978 primary has elapsed, the presence of petitioner's name on that ballot shall in no way be construed as a violation of the regulations of the State Court Administrator or the directive of the President Judge of the Traffic Court. However, petitioner is directed not to actively seek re-election, and in the event that he is re-elected, he must immediately resign his office if he continues in his present employment.

ROBERTS, J., files a dissenting opinion.

POMEROY, J., files a dissenting opinion.

MANDERINO, J., did not participate in the consideration or decision in this case.

ROBERTS, Justice, dissenting.

In a most unprecedented and exceptional fashion, the majority grants petitioner, an employee of the Philadelphia Traffic Court, by misuse of the extraordinary writ of prohibition, the right to continue as a political ward committeeman, to run for reelection to the ward committee in the May, 1978, primary, and to participate in the reorganization of the ward committee following the election. The special privilege extended to petitioners here and *In re Novalski,* 478 Pa. 243, 386 A.2d 530 filed this date, is exclusive, given neither to any other employees of the state judicial system nor to any employees of the city of Philadelphia. *In re Prohibition of Political Activities,* 473 Pa. 554, 375 A.2d 1257 (1977); *Philadelphia Home Rule Charter* § 10-107(4), (5) & (6); *Commonwealth ex rel. Specter v. Moak,* 452 Pa. 482, 307 A.2d 884 (1973). The majority's action destroys the effect of

regulations issued by respondents, the Court Administrator of Pennsylvania, acting by authority of this Court, and the President Judge of the Traffic Court of Philadelphia. These regulations are designed to prohibit partisan politics in the judicial system; the majority's action cannot but encourage this recognized evil.

> As recently as last June, this Court unanimously stated: "The vice of mixing political and judicial activity is too obvious to require elaboration here. Only by a steadfast separation of partisan political activity from the judicial function can the confidence of the public in courts and judges be merited and maintained."

*In re Prohibition of Political Activities*, 473 Pa. at 560, 375 A.2d at 1259–60.

Today the majority abruptly and regrettably departs from all that this Court, or any other court, has said or held on the critical issue of prohibiting political activity in the judicial process. The regulations issued by the Court Administrator and the President Judge required Traffic Court employees to cease political activities. Thirty-eight did so and had their names removed from the May, 1978, primary ballot. Despite the unanimous decision of *In re Prohibition of Political Activities,* supra, and despite the clarity of the directives of respondents which erect an unbreachable barrier between political activities and the judicial system, the majority grants petitioner the right to continue his political ward activities during his court employment. In *In re Prohibition of Political Activities,* supra, 473 Pa. at 561, 375 A.2d at 1260, this Court unanimously said that it "does not . . . sanction . . . [a court employee's] running for reelection . . . while retaining his court employment." In that case, the court employee was on the ballot as a bipartisan candidate virtually assured of reelection. Because the Court there properly refused to permit even a bid for reelection in which partisan politics would play no role, the Court most assuredly should refuse the writ of prohibition here, instead of directing, as the majority does, that petitioner may run for ward committee of a political party.

Equally disturbing and totally unprecedented is the majority's misuse of the writ of prohibition here. "The writ of prohibition, is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity . . . ." *Carpentertown Coal and Coke Co. v. Laird,* 360 Pa. 94, 102, 61 A.2d 426, 430 (1948). It should be used only to vindicate clear legal rights. See *In re Reyes,* 476 Pa. 59, 381 A.2d 865 (1977). Petitioner admitted at oral argument that he had no constitutional or legal right to run for political office without resigning from the Traffic Court staff. He argued only that the March, 1978, directive of the President Judge of the Traffic Court unfairly surprised him because of its timing. Petitioner could not have been surprised by this directive unless he deliberately closed his eyes to events staring him in the face. The court administrator issued regulations forbidding court employees from engaging in political activity as early as March, 1976. *In re Prohibition of Political Activities,* supra, 473 Pa. at 558 n.2, 375 A.2d at 1258 n.2. Now, two years later, and after our unequivocal and unanimous decision in *In re Prohibition,* expressly repudiating the claim petitioner advances, he cannot be heard to say that he could not know what was a matter of common knowledge to all others in his situation.

The majority's decision has the effect of permitting intrusion into ward party politics and depriving voters of the opportunity to select a committeeman by casting their ballots. Paradoxically, without explanation, the majority orders petitioner to run for office, yet denies him the opportunity to retain his office if elected. The effect of this apparently self-contradictory order is to allow the ward party leadership, rather than the voters, to fill petitioner's seat once he vacates it as ordered, for vacant seats are filled by party appointment. Requiring petitioner to remove his name from the ballot or resign from the Traffic Court as the regulations require would permit the office for which he is running to be filled by popular vote and avoid the unseemly situation in which, by misuse of the writ of prohibition, a court order directly affects a strictly political contest.

In sum, the misuse of the writ of prohibition here and in *In re Novalski,* supra, merely creates for three individuals an exception to the general statewide rule that court employees must remove themselves from partisan politics. This general rule was unanimously upheld last June in *In re Prohibition of Political Activities,* supra. Petitioner's request for relief, as in *In re Novalski,* supra, should therefore be denied in its entirety. The majority's failure to deny it compels strong dissent.

POMEROY, Justice, dissenting.

I agree with the Court that the presence of petitioner Ottaviano's name on the May primary ballot as a candidate for party committeeman should not now be construed as a violation of the Court Administrator's regulations. I further agree that should petitioner be re-elected as a committeeman he may not hold that position while maintaining his present employment with the Philadelphia Traffic Court. I part company with the Court, however, when it holds that petitioner may not be required to resign the committeeman's office he now holds if he wishes to retain his position with the Traffic Court. Although the opinion states that our last year's decision in *In re Prohibition of Political Activities by Court-Appointed Employees,* 473 Pa. 554, 375 A.2d 1257 (1977), is controlling, the majority has, in my view, misconstrued the meaning of that unanimous opinion insofar as it relates to court employees continuing to hold elective office. Hence this opinion.

In *Political Activities,* supra, we permitted a tipstaff, Mr. Michael Kaminski, to continue to serve as an elected member of a borough council until his term expired. We did so on the ground that "[i]t was not the intention of the [Court Administrator's] directives that they should cause the resignation from an elective office of one who was an incumbent of such office prior to the issuance of the directives." Id. 473 Pa. at 561, 375 A.2d at 1260. This does not mean,

however, that the holder of any sort of elective office is to be considered similarly situated. As I see them, the differing circumstances of Mr. Kaminski and the instant petitioner are obvious. A member of a borough council is a member of a public body elected by the voters at large for the purpose of formulating and implementing public policy. A party committeeman, in contrast, is a member of a voluntary association, not a public officer, who is selected for his position by the members of that association only, not by the electorate. See the Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* §§ 802, 812, 25 P.S. §§ 2832, 2842 (1963).

This is not, of course, to denigrate the importance of political parties in our form of government, or to minimize the position of party committeemen. But parties represent "politics" in the narrower and more commonly accepted sense of the word, viz., the selection and election of candidates for public office, as distinguished from the Aristotelian sense. Because this Court is convinced that such activities by court employees present a danger to "not only the independence, integrity and impartiality of the judicial system but also the appearance of these qualities," *In re Prohibition of Political Activities, supra,* 473 Pa. at 560, 375 A.2d at 1259, the Court Administrator of Pennsylvania has required "a steadfast separation of partisan political activity from the judicial function [so that] the confidence of the public in courts and judges [can] be merited and maintained." Id., 473 Pa. at 560, 375 A.2d at 1259--60. I believe that today's decision fails to serve fully these objectives. It is for this reason that I dissent from the action the Court now takes in sanctioning petitioner's retention of his post on the Ward Committee.*

---

* The Court grants the third prayer of the petition. That prayer is as follows:

"3. That a Writ of Prohibition issue directed to the Administrator and to the President Judge of the Traffic Court of Philadelphia prohibiting them from requiring the resignation of your Petitioner from the Ward Committee until such time as his present term has been completed and for a reasonable time thereafter."