# In Re: Investigation of Police Shooting of Jose Reyes. Gerald Salerno et al., Appellants.

Argued April 5, 1978, before President Judge Bow-MAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE. Judge CRUMLISH, JR. did not participate.

*Burton A. Rose,* with him *Peruto, Ryan & Vitullo,* for appellant.

*Joseph C. Murray,* with him *Paul S. Diamond,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, June 27, 1978:

On July 2, 1977, Jose Reyes was shot and killed, allegedly by officer Gerald Salerno of the Philadelphia Police Department. An investigation by the office of the Philadelphia District Attorney (DA) was launched.

On August 3, 1977, several police officers refused a request of the DA to appear at his office and give statements with regard to the Reyes shooting.

On August 5, 1977, the DA filed a petition with the Court of Common Pleas of Philadelphia County asking "confirmation" of the alleged subpoena power

of the DA under Section 8-409 of the Philadelphia Home Rule Charter.[1] (At this point in time, no subpoenas had been issued.) This petition was granted on August 18, 1977.

The police officers so requested to appear before the DA (appellants in these proceedings) filed with the Pennsylvania Supreme Court a petition for a writ of prohibition. On December 23, 1977, this petition, along with a motion of the DA for the Supreme Court to assume plenary jurisdiction, was denied. *In re Reyes,* 476 Pa. 59, 381 A.2d 865 (1977).

The DA then issued subpoenas to appellants commanding them to appear at his office on January 19, 1978. On advice of counsel, appellants failed to ap-

---

[1] Section 8-409 provides:

Every officer, Department, Board or Commission authorized to hold hearings or conduct investigations shall have power to compel the attendance of witnesses and the production of documents and other evidence and for that purpose it may issue Subpoenas requiring the attendance of persons and the production of documents and cause them to be served in any part of the City. If any witness shall refuse to testify as to any fact within his knowledge or to produce any documents within his possession or under his control, the facts relating to such refusal shall forthwith be reported to any one of the Courts of Common Pleas of Philadelphia County and all questions arising upon such refusal and also upon any new evidence not included in the report, which new evidence may be offered either in behalf or against such witness, shall as promptly as possible be heard by such Court. If the Court shall determine that the testimony or document required of such witness is legally competent and ought to be given or produced by him, the Court may make an Order comanding [sic] such witness to testify or to produce documents or do both and if the witness shall thereafter refuse so to testify or to produce documents in disobedience of such Order of the Court, the Court may deal with the witness as in other cases.

pear as ordered and on January 31, 1978, the DA petitioned the lower court for an order directing compliance by appellants with the subpoenas. This petition was granted on February 27, 1978.

This appeal was taken the next day and on March 6, 1978, we granted a stay of the February 27, 1978 order.

The sole issue before this Court is whether pursuant to Section 8-409 of the Philadelphia Home Rule Charter, the District Attorney of Philadelphia has the power to issue subpoenas. We hold that he does not and reverse.

This precise issue was addressed by our Supreme Court in *Commonwealth ex rel. Specter v. Freed (Specter)*, 424 Pa. 508, 228 A.2d 382 (1967), a case involving an attempt by the District Attorney of Philadelphia to subpoena a magistrate pursuant to an investigation of alleged irregularities in magistrates court.

In *In re Reyes, supra* at 70, 381 A.2d at 871, the Court said:

> Specter does not control the instant case. Initially Specter is a plurality opinion by three members of the court and, therefore, it is not binding precedent. . . . All that we decide today is that a writ of prohibition is not the proper procedure or remedy to challenge the district attorney's alleged subpoena power under §8-409 of the Philadelphia charter.

We are of the view that while *Specter* was not controlling of the issue before the Supreme Court in *In Re Reyes*, it is controlling of the issue before this Court and that this Court is bound thereby.

The three-Justice plurality opinion in *Specter*, written by Mr. Justice ROBERTS and concurred in by Mr. Justice (later Chief Justice) JONES and Mr. Justice O'BRIEN, stated flatly that the office of district

322

attorney had no subpoena power at common law,[2] that the powers vested therein were not enlarged or otherwise altered by Section 8-409, and that in this context, the DA is a state officer charged with performing a state function and, therefore, beyond the pale of the Charter.[3] The plurality opinion also held that the powers of the DA were unchanged by Section 8-409 because the First Class City Home Rule Act (Act), Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §13101 et seq., vests self-government in first class cities with regard only to municipal, not state, functions.

> [T]he Philadelphia Home Rule Charter does not affect the manner in which the district attorney shall discharge the functions and duties of his office; we have arrived at this view because we believe that neither the Constitution nor statutes of this Commonwealth have ever granted Philadelphia or any other political subdivision of Pennsylvania authority to alter or interfere with the district attorney's conduct of law enforcement activities.

*Specter, supra* at 511-12, 228 A.2d at 383.

---

[2] *Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A. 2d 891 (1951) ; *see also Annenberg v. Roberts*, 333 Pa. 203, 2 A.2d 612 (1938) ; *Pennsylvania Crime Commission v. Nacrelli*, 5 Pa. Commonwealth Ct. 551 (1972).

[3] The argument that in subsequent cases the Supreme Court has modified or rejected *Specter* by finding the office of the District Attorney to be a "city" office within the Charter is rejected as in no such case did the Supreme Court address the issue of whether the Charter altered or enlarged the powers of the District Attorney. For example, in *Commonwealth ex rel. Specter v. Moak*, 452 Pa. 482, 307 A.2d 884 (1973), the Supreme Court held that assistant district attorneys in Philadelphia were city employees for purposes of that provision of the Charter, Section 10-107(5), requiring city employes resign from office before becoming candidates for public office.

The plurality opinion continued, with regard to the absence of either a common law or pre-charter power in the DA to issue subpoenas: "Therefore, as far as [the Act] is concerned, the General Assembly in no way disturbed pre-existing laws regarding the nature of district attorneys' functions and duties or the powers of local government with regard to them." *Specter, supra* at 514, 228 A.2d at 385.

Mr. Justice (now Chief Justice) EAGEN, concurring, would have held simply that under Section 18 of the First Class City Home Rule Act, 53 P.S. §13133, the Charter could neither limit nor enlarge the powers of offices fixed by the legislature and that as the legislature had not, prior to the Charter, seen fit to vest in district attorneys a subpoena power, any attempt to do so by means of the Charter would be unlawful. *See* Section 1 of the Act of May 3, 1850, P.L. 654, 16 P.S. §9952.

Mr. Justice COHEN, concurring, was of the view that as Section 1 of the Act of June 3, 1919, P.L. 369, *as amended*, 16 P.S. §7741, empowers district attorneys to appoint detectives to investigate magistrates' conduct in office, but does not include an express grant of subpoena power, the power did not exist. While not expressly directing himself to the Charter, as did Messrs. Justices ROBERTS and EAGEN, we believe that Mr. Justice COHEN did so by negative implication for if the Act and Charter were applicable to district attorneys, they would have, by Section 8-409, provided the requisite statutory authority. *See Commonwealth ex rel. Margiotti v. Orsini, supra* note 2; *Annenberg v. Roberts, supra note* 2; *Commonwealth v. Marmon,* 210 Pa. Superior Ct. 202, 232 A.2d 236 (1967).[4]

---

[4] A statutory grant of subpoena power will be narrowly construed. *Margiotti v. Orsini, supra* note 2.

Mr. Justice MUSMANNO, concurring, concluded:

> Granting the district attorney the powers he seeks in this case would be to give a district attorney, any district attorney, a scalpel and saw with which he could sever away the most fundamental right of American citizenship. . . . This Court could not possibly grant the district attorney this startling demand.

*Specter, supra* at 534, 228 A.2d at 395.

Only Mr. Chief Justice BELL dissented.

In *In Re Reyes, supra* at     , 381 A.2d at 871-72, Mr. Justice PACKEL, dissenting, briefly analyzed *Specter* as follows:

> In [Specter], six of the seven Justices agreed that the court of common pleas could not enforce an order to compel testimony for a district attorney investigation. . . . There were alternative bases for the conclusion reached by the court, i.e., whether the district attorney of Philadelphia should be viewed as a state official or as a municipal official. On either basis the answer was the same—the district attorney does not have the power to subpoena for general investigative purposes. . . .

*In Re Reyes, supra* at 71, 381 A.2d at 871-72.

Thus, of the six Justices in *Specter* who agreed that the DA lacks subpoena power, five can be said to have either directly or indirectly addressed the precise issues and arguments raised in this Court. Accordingly, we view ourselves as bound by *Specter*.

ORDER

Now, June 27, 1978, the order of the lower court is hereby reversed.