579 A.2d 1302

**Justice Rolf LARSEN, Petitioner,**

**v.**

**Honorable Bruce W. KAUFMANN, Honorable Charles L. Durham, James H. Higgins, Lawrence T. Hoyle, Jr., Esq., and Antonia L. Scarlata, Respondents.**

Supreme Court of Pennsylvania.

Argued May 11, 1990.

Decided Sept. 28, 1990.

A. Charles Peruto, Sr., Philadelphia, for petitioner.

Robert L. Keuch, Washington, D.C., for J.I.R.B.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

ORDER.

PER CURIAM.

AND NOW, to wit, this 28th day of September, 1990, this Court being equally divided, the Petition for a Writ of Prohibition and a Complaint in Quo Warranto are denied.

PAPADAKOS, J., files a dissent in which ZAPPALA and CAPPY, JJ., each concur in the result.

PAPADAKOS, Justice, dissenting.

Petitioner, Mr. Justice Rolf Larsen, has filed a Petition for a Writ of Prohibition and a Complaint in Quo Warranto with respect to the proper composition of, and procedures to be followed by, the Judicial Inquiry and Review Board, which has commenced proceedings against him. Three members of this Court have taken the position that the matters raised in this Petition are interlocutory and not to be considered at this time. Since this creates an equally divided court, the Petition is being denied.

Because of the stance taken by three members of this six-man court that the Judicial Inquiry and Review Board is nothing more than a recommending body and that this Court, in its adjudicative power, can correct any and all errors committed by the Board, the Board is free to exercise unfettered latitude in the conduct of all proceedings before it without regards to the constitutional concepts of due process and fair play. The Board is also free to "establish its own composition," "play it by ear." "make it up as it goes along," and "keep doing it over until it gets it right." At least, these are the complaints brought to us by Mr. Justice Larsen and three of his colleagues maintain that all such alleged misconduct is interlocutory and reviewable only after a recommendation for sanctions has been filed with this Court. These three do not explain how they will exonerate any violations of the respondent-jurist's constitutional rights, especially the constitutional right to confidentiality, once the skunk is left out of the bag.

Perhaps my three brethren believe that jurists against whom charges have been brought (especially colleagues on this court) are not entitled to constitutional protections afforded all inhabitants of this land in criminal and quasi-criminal proceedings. Two of them have indicated the belief that such jurists are not entitled to the protections of the Fifth Amendment and that they must prove their innocence when charged with misconduct. See Dissent of Mr. Chief Justice Nix, joined by Mr. Justice Flaherty, in *Matter of Chiovero*, 524 Pa. 181, 570 A.2d 57 (1990).

Perhaps my colleagues are correct and the charges of "kangaroo court proceedings" levelled by Mr. Justice Larsen are interlocutory and best addressed if and when a recommendation of sanctions is filed with us. However, the issue regarding the composition of the Board which will review the report of the hearing committee and prepare its own findings and report, is, in my view, a jurisdictional issue and reviewable as a matter of right, although interlocutory in nature. At least, this is true in every court in America except in our court, it appears, when it involves a colleague of ours. Whether a Justice of the Supreme Court of Pennsylvania or a justice of the peace of a magisterial district is involved, the rules of justice must remain the same.

The facts are as follows: Petitioner received a letter dated May 24, 1988, by which he was notified by the Board of the initiation of formal proceedings against him on two charges at Board Matter No. 140. An evidentiary hearing on those two charges commenced on August 23, 1988, before a three-member Hearing Committee. On October 3, 1988, after thirteen days of hearings, three new, separate and unrelated charges were filed against Petitioner. At the Board's order, the three new charges were joined with the two original charges and a hearing *ab initio* on all charges was ordered commenced before a newly constituted six member Hearing Committee, composed of all six non-recused members of the Board—essentially comprising a committee of the whole. (Two members of the Board at that

time, Judges Ross and Rowley, had recused themselves from any participation in these matters.) Two of the Hearing Committee members, the Honorable Bruce W. Kaufman and Mr. James H. Higgins, took positions on the Hearing Committee even though each of their terms as members of the Board were fixed to expire on November 14, 1988. There is some dispute, not currently relevant, as to whether the hearing on the combined charges commenced before or after November 14, 1988. Respondents take the position that the hearing commenced prior to November 14, 1988. The Hearing Committee was subsequently expanded to nine members (again, a Committee of the whole) and hearings were held at various times up to and including June 10, 1989. Following the conclusion of the hearings, Petitioner and the Board prosecutor submitted proposed findings of facts and conclusions of law and orally argued their respective positions on July 25, 1989. During the proceedings and while the Hearing Committee was deliberating, Petitioner filed various motions and petitions including: 1) Motion for Recusal of Antonia L. Scarlata; 2) Supplemental Motion for Recusal of Antonia L. Scarlata; 3) Petition to the Governor for the Removal of Antonia L. Scarlata; 4) Petition for Disqualification and Removal of Judge Charles L. Durham; 5) Motion for Recusal of Chief Justice Robert N.C. Nix, Jr.; 6) Motion for Recusal of James H. Higgins; 7) Petition to the Governor for the Removal of James H. Higgins; 8) Motions for the Recusal of Bruce W. Kaufmann; and 9) Petition to the Governor for the Removal of Bruce W. Kaufmann. Some of these motions and petitions were denied; some of them have not been acted upon and are not being considered herein. On January 31, 1990, while deliberations at Board Matter No. 140 continued and various petitions and motions filed by Petitioner were pending, the term of Antonia L. Scarlata as a member of the Board expired.

On April 5, 1990, Respondents, Bruce W. Kaufmann, Judge Charles L. Durham, James H. Higgins, Lawrence T.

Hoyle, Jr., Esquire, and Antonia L. Scarlata jointly issued a document styled the "Finding and Report of the Board."

On April 19, 1990, a Petition for a Writ of Prohibition, a Complaint in Quo Warranto, a Petition for Stay, a Petition for Recusal of Chief Justice Robert N.C. Nix, Jr., Averments of Due Process and Equal Protection Violations and Averments of Violations of Rights Under 42 U.S.C. § 1983 were filed on behalf of Petitioner with this Court, and served upon each named Respondent. On April 24, 1990, Petitioner, through his counsel, presented to the undersigned, a Petition for an Immediate Stay of All Proceedings at Judicial Inquiry and Review Board Matter No. 140. Also, on April 24, 1990, Petitioner received a document styled "Rule 9 Report" in Board Matter No. 140. That "Rule 9 Report" was joined by Judge Robert T.J. Kelly, Jr., Judge Frank J. Montemuro, Jr. and Judge Jessamine S. Jiuliante. On April 25, 1990, Petitioner received a document styled "Dissenting and Joining Report" in Board Matter No. 140. That "Dissenting and Joining Report" was authored by Judge James M. Munley. On April 26, 1990, this writer entered an order staying all proceedings and actions at Board Matter 140. On April 30, 1990, this Court entered a per curiam order directing that this matter be listed for argument on Friday, May 11, 1990, the argument "being limited to the single question raised by the Petition for Writ of Prohibition and Complaint in Quo Warranto, of the proper composition of the Judicial Inquiry and Review Board for the purposes of these proceedings in accordance with the Pennsylvania Constitution, Art. V, Section 18(b) and Rules 5 and 9 of the Rules of Procedure Governing the Judicial Inquiry and Review Board." Petitioner, Mr. Justice Rolf Larsen, did not participate in this matter, which is presently before us for resolution.

I.

It is clear from a cursory reading of the relevant Rules and provisions of our State Constitution that the Board, or

at least some members thereof, have acted in a highly irregular manner, injurious to Petitioner.

Article V, Section 18 of our Constitution provides in pertinent part as follows:

(a) There shall be a Judicial Inquiry and Review Board having nine members as follows: three judges of the courts of common pleas from different judicial districts and two judges of the Superior Court, all of whom shall be selected by the Supreme Court; and two non-judge members of the bar of the Supreme Court and two non-lawyer electors, all of whom shall be selected by the Governor.

(b) *The members shall serve for terms of four years, provided that a member, rather than his successor, shall continue to participate in any hearing in progress at the end of his term.* A vacancy on the board shall be filled by the respective appointing authority for the balance of the term. The respective appointing authority may remove a member only for cause. No member shall serve more than four consecutive years; he may be reappointed after a lapse of one year. Annually the members of the board shall elect a chairman. The board shall act only with the concurrence of a majority of its members. (Emphasis added)

.    .    .    .    .

(j) The Supreme Court shall prescribe rules of procedure under this section.

.    .    .    .    .

The relevant Rules adopted by this Court and applicable to the Judicial Inquiry and Review Board at all times relevant hereto are as follows:

## RULE 4. SETTING FOR HEARING BEFORE BOARD

After the filing of an answer or upon expiration of the time for the filing, the Board shall order a hearing to be held concerning the charges, which, if sustained, may lead to the suspension, removal, discipline or compulsory

retirement of the judge. The Board shall set a time and place for hearing and shall give notice of such hearing by mail to the judge at least twenty (20) days prior to the date set.

## RULE 5.  HEARING

. . . . .

(d) The hearing shall be held before a Committee of the Board consisting of not less than three (3) members, at least one of whom shall be a judge.

. . . . .

## RULE 9.  REPORT OF COMMITTEE TO BOARD

(a) After the conclusion of the hearing before the Committee of the Board, the Committee shall promptly prepare and transmit a report to the Board.

(b) Upon receiving the report of the Committee, the Board shall make its findings and report and promptly mail a copy to the judge.

## RULE 10.  OBJECTIONS TO REPORT OF BOARD.

Within twenty (20) days after mailing of the copy of the Board's findings and report to the judge, the counsel for the judge or the judge may file with the Board an original and ten (10) legible copies of a statement of objections to the findings and the report.

## RULE 11.  APPEARANCE BEFORE BOARD

If no statement of objections to the findings and the report of the Board is filed within the time provided, the Board may adopt its findings and report without a hearing. If such statement is filed, or if the Board in the absence of such statement proposed to modify or reject its findings and report, the Board shall give the judge and the counsel for the Board and the complainant an opportunity to be heard orally before the Board, and written notice of the time and place of such hearing shall be

mailed to the parties and their counsel at least ten (10) days prior thereto.

## RULE 23. DEFINITIONS

In these rules, unless the context or subject matter otherwise requires:

(a) "Board" means the Judicial Inquiry and Review Board.

. .        .        .        .        .

(d) "Committee" means a group of three or more members of the "Board" at least one of whom shall be a judge....

Our Constitution provides only that a Board member "shall continue to participate in any *hearing* in progress at the end of this term." (Emphasis added.) Our Rules make a definitive distinction between the Board itself and hearings to be conducted by a Committee of the Board. Participation in a hearing as a committee member does not entail continuation as a Board member as well. The two functions are separate and distinct under our Rules. The Hearing Committee (composed of at least three board members—not necessarily a committee of the whole) holds a hearing and transmits their report to the full Board which, after further proceedings, must make their own independent findings and report. It is hard to see how the language of our Constitution and Rules can be interpreted in any other way and, indeed, the system so established is consistent with similarly bifurcated procedures common in business, legislative and judicial bodies across the country. Robert's Rules of Order, Revised, which is commonly applicable to deliberative bodies, defines and classifies committees at § 49 thereof and committees of the whole at § 55. It is clear from a perusal of those Rules that an assembly is legally distinct from a committee composed of some or all of its members. Likewise, it is common in adjudicative matters disposed of by administrative agencies today to separate the hearing function from the decision making function and to provide that hearing examiners make an initial

report of findings or recommendation to a review board or panel that is responsible for the ultimate decision. He who hears need not decide. *Morgan v. United States*, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). See also, Davis, Administrative Law Text (West Publishing Co.1972), § 1102.

In short, Respondents Kaufmann, Higgins and Scarlata acted improperly in attempting to act as *Board* members (as opposed to Committee members) after their terms expired.[1]

## II.

Petitioner's appeal is interlocutory unless it can be shown that the irregularities complained of justify resort to the grant of a Writ of Prohibition by this Court. We think that grant of the writ is warranted under these circumstances. As Mr. Chief Justice Nix stated in *Capital Cities Media, Inc. v. Toole*, 506 Pa. 12, 483 A.2d 1339 (1984):

Since the form of relief requested by the applicants was a writ of prohibition, the nature and purpose of that writ is essential to our discussion. Prohibition is cogently explained by the late Chief Justice, then Justice Horace Stern in the leading case of *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 61 A.2d 426 (1948):

Prohibition is a common law writ of extremely ancient origin,—so ancient, indeed, that several forms for its use are set forth in Glanville, the earliest known treatise on English law (1187); in the following century it was recognized by Bracton as an established part of the common law. Being a prerogative writ of the king it was originally employed exclusively by the Court of

---

1. A review of this Court's decisions since 1968 (the year of the adoption of our present Constitution) shows that we have *never* ordered that a Judicial Inquiry and Review Board appointee continue to serve as a *Board* member after his or her term thereon expires. In the case of Judge McEwen, in an order dated December 30, 1986, we specified that Judge McEwen's term of service expired on January 25, 1987, and that he continue "to participate in any hearing in progress at the end of his term." This is entirely consistent with this opinion.

King's Bench, but subsequently issued out of the Courts of Chancery, Common Pleas and Exchequer as well. Its principal purpose is to prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior and an inferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful powers and jurisdiction.

. . . . .

... The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise: see *First Congressional District Election*, 295 Pa. 1, 13, 144 A. 735, 740, and cases referred to in the dissenting opinion in *Philadelphia County Grand Jury Investigation Case*, 347 Pa. 316, 330–334, 32 A.2d 199, 206–208; also *Roche, U.S. District Judge, v. Evaporated Milk Association*, 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185]; *United States Alkali Export Association, Inc. v. United States*, 325 U.S. 196 [65 S.Ct. 1120, 89 L.Ed. 1554]. As pointed out in the last cited authority (p. 203 [65 S.Ct. at p. 1125] ), "appellate courts are reluctant to interfere with decisions of lower courts, even on jurisdictional questions, which they are competent to decide and which are reviewable in the regular course of appeal

... The [extraordinary] writs may not be used as a substitute for an authorized appeal."

*Id.,* 360 Pa. at 97–98, 102, 61 A.2d at 428, 430.

. . . . .

In addition to total absence of jurisdiction, our cases have extended the application of the writ of prohibition to encompass situations in which an inferior court, which has jurisdiction, exceeds its authority in adjudicating the case. This latter situation has been termed an "abuse of jurisdiction." *Philadelphia Newspapers, Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978), *appeal dismissed,* 443 U.S. 913 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979); *Commonwealth v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975); *Commonwealth v. Smart,* 368 Pa. 630, 84 A.2d 782 (1951); *Schlesinger Petition,* 367 Pa. 476, 81 A.2d 316 (1951); *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). However, it must be emphasized that even in this latter category of cases the concern is with the jurisdiction as exercised as opposed to an error or mistake in the application of the law to the facts.

The criteria for granting a writ of prohibition are satisfied by meeting a two-pronged test derived from the language of *Carpentertown Coal, supra. In re Reyes,* 476 Pa. 59, 381 A.2d 865 (1977); *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134 (1974). First, it must be established that there is no adequate remedy at law to afford relief; second, there must be extreme necessity for the relief requested to secure order and regularity in judicial proceedings. *Spykerman v. Levy,* 491 Pa. 470, 421 A.2d 641 (1980); *In re Investigating Grand Jury of Philadelphia County,* 487 Pa. 68, 408 A.2d 1099 (1979); *In re Reyes, supra; Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975) *cert. denied and appeal dismissed,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976); *Commonwealth ex rel. Specter v. Shiomos, supra; Petition of Specter,* 455 Pa. 518, 317 A.2d 286 (1974); *Carpentertown Coal, supra.*

Thus, the writ of prohibition under Pennsylvania law is an extraordinary remedy invoked to restrain courts and quasi-judicial bodies from usurping jurisdiction which they do not possess or exceeding the established limits in the exercise of their jurisdiction. The writ is not one of right but rather rests with the sound discretion of the appellate court. A writ will issue only upon a showing of extreme necessity and the absence of any available remedy at law. Where relief may be sought through ordinary avenues of judicial review, the writ will not lie.

506 Pa. at 17–20, 483 A.2d 1339.

Other jurisdictions have expressly allowed resort to the Writ of Prohibition to restrain a judge or other official from proceeding in a case in which he or she is disqualified to sit. See, *e.g.*, *Arizona Conference Corp. of Seventh Day Adventists v. Barry*, 231 P.2d 426, 72 Ariz. 74 (1951); *Zdonek v. Superior Court for Los Angeles County*, 113 Cal.Rptr. 669, 38 C.A.3d 849 (1974); *Melson v. Court of Chancery*, 234 A.2d 440 (Del., 1967); *Bundy v. Rudd*, 366 So.2d 440 (Fla., 1978); *Riner v. Flanders*, 159 S.E. 693, 173 Ga. 43 (1931); *Wedding v. Lair*, 404 S.W.2d 451 (Ky., 1966); *State ex rel. Burke v. Beaudoin*, 40 N.W.2d 885, 230 Minn. 186 (1950); *State v. Maples*, 402 So.2d 350 (Miss., 1981); *State ex rel. Larecy v. Sullivan*, 248 P.2d 239, 207 Okl. 128 (1952); *Lyle v. Collier*, 62 S.W.2d 1112 (Tex.Civ.App., 1933); *State ex rel. Osborne v. Chinn*, 121 S.E.2d 610, 146 W.Va. 610 (1961).

See also, other cases collected at 73 C.J.S. Prohibition § 21. The situation we have here is precisely that of three former board members disqualified to sit on the Board and act thereon.

Has Petitioner met the two-pronged test of *Carpentertown Coal, supra,* that must be met in Pennsylvania before this Court will issue a Writ of Prohibition? I think that he has. First, it is obvious that Petitioner has no *alternative,* and therefore, no *adequate* remedy at law to prevent the three Respondents herein from acting *ultra vires.*

Second, is there extreme necessity for the relief requested? I think there is, for Petitioner may well suffer irreparable harm if the relief requested is not granted. Our Rules applicable to the Judicial Inquiry and Review Board provide as follows:

### RULE 20. CONFIDENTIALITY OF PROCEEDINGS

All papers filed with and proceedings before the Board shall be confidential until a record is filed by the Board in the Supreme Court.

### RULE 16. CERTIFICATION OF BOARD'S RECOMMENDATION TO SUPREME COURT

Upon making a determination recommending the suspension, removal, discipline or compulsory retirement of a judge, the Board shall file promptly a copy of the recommendation certified by the chairman or secretary of the Board, together with the transcript and the findings and conclusions with the Prothonotary of the Supreme Court and shall mail to the judge immediately notice of such filing, together with a copy of such recommendation, findings and conclusions.

Only Board recommendations *adverse* to a judge or justice are filed with this Court thereby losing the cloak of confidentiality otherwise applicable to Board proceedings. It is entirely possible that the three Respondents, who are acting outside the scope of their authority here, are providing the votes necessary for an adverse recommendation that would otherwise not be made. If that is so, or turns out to be so, Petitioner runs the risk of adverse publicity he might never be able to overcome, even if later acquitted of the charges made. That is being forced to run the risk of irremediable harm unless we intervene to require that only the Board members duly and legally qualified to act participate in this matter. We must so intervene. Petitioner, like any other judge or citizen is entitled to a fair shake and a procedure in

which all persons involved play by the rules. Our humblest citizen is entitled to no less.

For the reasons set forth above, a Writ of Prohibition must issue directing the Judicial Inquiry and Review Board to comply with their rules of procedure established and adopted by this Court and to make recommendations to this Court only upon a vote of their members duly qualified to act at the time the recommendation is made, consistent with this opinion.

Accordingly, I dissent to the dismissal of the petition and the denial of relief.

LARSEN, J., did not participate in the consideration or decision of this matter.

ZAPPALA and CAPPY, JJ., concur in the result.